THE ROCHESTER SAVINGS BANK, Respondent, *v.* JAMES A. AVERELL et al., Appellants.

Under the provision of the General Manufacturing Act requiring the written assent of stockholders owning two-thirds of the capital stock of a manufacturing corporation, to the mortgaging of its property (Chap. 517, Laws of 1864, as amended by chap. 481, Laws of 1871), such an assent is an indispensable condition of the creation of a valid mortgage.

Where, however, a mortgage has been executed without such assent it is validated by a subsequent assent where there are no intervening rights; such assent makes the instrument, as of the time it is given, a valid mortgage.

The filing of the assent in the office of the clerk of the county where the mortgaged property is situated is not an indispensable condition to the validity of the mortgage; as against a subsequent mortgagee or purchaser, with notice, the mortgage is valid.

*It seems*, that in such case, if the filing of the assent is essential to complete the mortgagee's right, this may be done as of the time the assent was given.

The act of 1875 (Chap. 88) authorizing the filing of an assent when, by accident or mistake, such filing has been omitted is not a legislative construction of said provision contrary to that above given.

A loan of money to pay debts of such a corporation, where the money is so applied, is a debt contracted in the business for which the corporation was organized within the meaning of said provision, and the loan may be secured by mortgage.

(Argued June 20, 1884; decided October 7, 1884.)

APPEAL from judgment of the General Term of the Supreme Court, in the fourth judicial department, entered upon an order made April 8, 1882, which affirmed a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term.

This action was brought to foreclose a mortgage executed January 2, 1874, by the Ontario Iron Company, a corporation organized under the General Manufacturing Act upon its real estate to secure a bond executed by that company, and by certain others of the defendants.

These securities were given to secure a loan of $10,000 made by plaintiff to said corporation, to pay certain of its debts, and

which was applied for that purpose. The mortgage was recorded in Wayne county January 31, 1874. No consent in writing of stockholders owning two-thirds of the stock of said corporation was given prior to the execution of the mortgage. Such a consent was signed, however, in November, 1874, which was dated January 3, 1874, and the mortgage was thereupon re-acknowledged and again recorded. This consent plaintiff's attorney instead of filing in the office of the county clerk of Ontario county, where the mortgaged property was situated, filed in Monroe county. In 1877 said corporation having procured a prior assent in writing of stockholders owning two-thirds of its stock, executed another mortgage, covering the same property, to one James S. Bean to secure money borrowed and applied to pay its debts. Bean at the time knew of plaintiff's mortgage. The Bean mortgage was foreclosed, and the property purchased by the defendants, James G. and William L. Averell, who defend this action, claiming that plaintiff's mortgage was invalid, because no previous written assent thereto of stockholders was given and filed. The Averells were stockholders in said corporation and knew of plaintiff's mortgage.

Further facts appear in the opinion.

*Louis Hasbrouck* for appellants. The plaintiff's alleged mortgage was void, because the consent of two-thirds of the stockholders to the execution of the same was never filed in the clerk's office of Wayne county, where the lands of the company sought to be mortgaged were situated. (2 R. S. [7th ed.] 1731; Laws of 1864, chap. 517, § 2, amended by Laws of 1871, chap. 481; *Vail* v. *Hamilton*, 85 N. Y. 453–456; 20 Hun, 359; *Carman* v. *Lakey*, 80 N. Y. 345, 351; *Hardman* v. *Bowen*, 39 id. 196, 198, 199; *N. Y. & O. M. R. R. Co.* v. *Van Horne*, 57 id. 473; *Greenpoint Sugar Co.* v. *Whitin*, 69 id. 328, 338.) As the Averells have never made any statements or representations to the plaintiff in any manner concerning their said bond and mortgage, and as plaintiff has not been influenced in its action, concerning said bond and mortgage, in any manner, by any action, statement or representation

of the defendants Averell, or either of them, the appellants are not estopped from urging the defense of non-validity of the plaintiff's alleged mortgage. (Herman on Estoppels, 18, 37, 67, 251, 313, 335, 341, 387; *Willard Canal Co.* v. *Hathaway*, 8 Wend. 480; 2 Smith's Leading Cases, 514; *Booth* v. *Powers*, 36 N. Y. 22, 23; *Dezell* v. *Odell*, 3 Hill, 219; *Plumb* v. *Cattaraugus Ins. Co.*, 18 N. Y. 392; *Brown* v. *Bowen*, 30 id. 541; *Payne* v. *Burnham*, 62 id. 69, 73; *Mallory* v. *Horan*, 49 id. 111; *Meyerberg* v. *Haynes*, 50 id. 675.) A statute cannot be evaded by estoppel. (*N. Y. & O. M. R. R. Co.* v. *Van Horne*, 57 N. Y. 473.) If the Averells had agreed with their co-defendants to pay the plaintiff's alleged mortgage, it is no help to the plaintiff, for this action is brought for the foreclosure of an alleged mortgage, not upon the alleged promise to the co-defendants. (*Simson* v. *Brown*, 68 N. Y. 335, 361, 362.) The plaintiff's mortgage being void, defendants, who are in possession of the land as owners, have as much right to contest it as if it were a forgery, or usurious. (*Knickerbocker Life Ins. Co.* v. *Hill*, 16 Abb. [N. S.] 321; *M. Ex. B'k* v. *Com. W. H. Co.*, 49 N. Y. 635, 642; *Mason* v. *Lord*, 40 id. 476; *Berdan* v. *Sedgwick*, 44 id. 626; *Rutter* v. *Kilpatrick*, 63 id. 604, 606; *Chamberlain,* v. *Spargur*, 22 Hun, 437; 86 N. Y. 603; *In re Gantz*, 85 id. 536; *N. Y. State L. & T. Co.* v. *Helmer*, 77 id. 64; *Rector, etc.,* v. *Mack*, 93 id. 488; Williams' Equity, 249; Story's Equity, § 409; *Wood* v. *Chapin*, 13 N. Y. 509; *Page* v. *Waring*, 76 id. 463; *Lacustrine F. Co.* v. *L. G. & F. Co.*, 82 id. 476.) The plaintiff's alleged mortgage cannot be sustained on the theory of an equitable mortgage because it is void by statute. (*Barton* v. *Plankroad Co.*, 17 Barb. 404; *Page* v. *Wilson*, 74 N. Y. 348, 351; 1 Washburn on Mortgages, 514.)

*Edward Harris* for respondent. The assent of more than two-thirds of the stockholders having been in fact given, all the stockholders having repeatedly assented to the plaintiff's mortgage and the application of the proceeds of the loan secured by it to the payment of the company's debts, Bean having taken

his mortgage, with full knowledge of the plaintiff's mortgage and of such assent, he cannot nor can Messrs. Averell assail its validity. (*Green Point Sugar Co.* v. *Whitin*, 69 N. Y. 333; *Beecher* v. *M. & P. R. M. Co.*, 23 Alb. L. J., 316; 1 Jones on Mortg., § 127.) The appellants are estopped from asserting the invalidity of plaintiff's mortgage. (*Welland Canal Co.* v. *Hathaway*, 8 Wend. 480; *Dezel* v. *Odell*, 3 Hill, 222; *Plumb* v. *Cat. Co. Mut. Ins. Co.*, 18 N. Y. 394; *Brown* v. *Bowen*, 30 id. 541; 6 Hill, 17; 5 Denio, 158; 34 N. Y. 60-109; 44 id. 202; 24 Barb. 57; 3 Hill, 215; 27 Barb. 600.) The Messrs. Averell having purchased subject to the mortgage, their bid must be deemed to have been made in reference to the relation of the sureties to the mortgage, and with reference to the land being the primary fund to satisfy the mortgage debt. (*Marsh* v. *Pike*, 10 Paige, 595; *Calvo* v. *Davies*, 73 N. Y. 211.) Upon the facts as proved and found, the transaction in question created an equitable mortgage in favor of the plaintiff, which a court of equity will enforce. (Thomas on Mortgages, 26; *Lansing* v. *Tompkins*, 43 Barb. 300; *Coman* v. *Lakey*, 80 N. Y. 345; *Landers* v. *F. St. M. Ch.*, 15 Hun, 340; *Trustees of the F. Bap. Ch.* v. *Brooklyn F. Ins. Co.*, 19 N. Y. 305; Jones on Mortgages, § 127.)

Andrews, J. The savings bank mortgage is dated January 2, 1874, and was recorded January 21, 1874. The Bean mortgage is dated May 9, 1877, and was recorded May 12, 1877. The consideration of both mortgages was money loaned by the respective mortgagees to the Ontario Iron Company at their dates respectively. The money in both cases was procured by the mortgagor to be used in paying debts of the company, and was actually applied to that purpose. In one respect the situation of the respective mortgagees was unlike. The savings bank had no interest in having the debts discharged which were paid out of the money loaned by the bank. The money loaned by Bean was borrowed and used to pay notes of the mortgagor, which had been discounted by a firm of which Bean was a member, and which the firm had indorsed and trans-

ferred, and upon which the firm was liable as indorser. Bean, when he took the mortgage, had both constructive and actual notice of the plaintiff's mortgage. It was on record, and its existence was disclosed on the search procured by Bean before he took his mortgage. Moreover, he was informed by the Messrs. Averell, his partners, who were large stockholders and also directors in the Ontario Iron Company, and who subsequently became purchasers of the mortgaged property on the foreclosure of the Bean mortgage, that the plaintiff's mortgage was unpaid. The appellants here are the Messrs. Averell, who resist the foreclosure of the bank mortgage on the ground that the consent of the stockholders of the Ontario Iron Company to its execution had not been obtained before the mortgage was executed, and that no assent has since been filed in the county of Wayne, where the mortgaged premises are situated. The Ontario Iron Company was a manufacturing corporation organized under the general law of 1848. It was proved as matter of fact that no assent of the stockholders of the iron company to the plaintiff's mortgage had been obtained prior to its execution, and that no assent has since been filed in the county of Wayne. It appears, however, that in November, 1874, the president of the company, on being advised that the assent of stockholders owning two-thirds of the stock, was essential to the validity of the mortgage, procured such assent in due form and delivered it to the plaintiff. The plaintiff's attorney by mistake or inadvertence, instead of filing it in Wayne county, filed it in the clerk's office of Monroe county. The question is whether the failure to procure and file in the proper county, the assent of the stockholders of the iron company to the plaintiff's mortgage, at or prior to its execution, rendered the mortgage invalid as against the Bean mortgage, notwithstanding the intermediate assent of the requisite number of stockholders obtained in November, 1874.

The act of 1848 authorizes corporations formed under the act, to purchase, hold and convey real estate for corporate purposes, but prohibits them from mortgaging or giving any lien thereon. (§ 2.) This restriction was modified by chapter

517 of the Laws of 1864, which permits such corporations to mortgage their real estate to secure the payment of corporate debts contracted in the corporate business, " provided that the written assent of the stockholders owning at least two-thirds of the capital stock of such corporation, shall first be filed in the office of the clerk of the county where the mortgaged property is situated." The restraint imposed by the act of 1848, upon corporations formed thereunder, against mortgaging their property, created a disability not existing at common law, for by the common law the power to alien and mortgage lands in the course of its business, inhered in corporations capable of acquiring and holding them, as in natural persons, as an incident of ownership. (*Curtis* v. *Leavitt,* 15 N. Y. ·9 ; *Barry* v. *Merchants' Exchange Co.,* 1 Sandf. Ch. 280 ; 2 Kent's Com. 281.) The legislature in creating corporations may grant or withhold such powers as it sees fit, and the prohibition against mortgaging, in the act of 1848, was absolute and unqualified. The act of 1864 does not in terms repeal the prohibition in the original act but is a new provision containing the permission to mortgage for the special purpose mentioned, but attaching thereto the proviso above quoted.

The plaintiff's mortgage although not executed to the creditors directly, was executed to secure the payment of debts of the corporation, within the meaning of the act of 1864. (*Carpenter* v. *Black Hawk G. M. Co.,* 65 N. Y. 44.) But no assent of the stockholders having been obtained, it was invalid and created no present lien upon the property. (*Vail, Rec'r,* v. *Hamilton,* 85 N. Y. 453.) In the case cited, this court affirmed a judgment setting aside at the instance of a receiver, a mortgage executed by a corporation organized under the act of 1848, on the ground that the assent of the requisite number of stockholders had not been obtained. The case is an authority for the proposition that the assent of stockholders is an indispensable condition to the creation of a valid mortgage under the act of 1864.

The determination of the present controversy turns in our view upon the legal effect of the subsequent assent of Novem-

ber, 1874. The question is whether the assent then given, although not filed in Wayne county, operated as between the plaintiff and the appellants to validate the savings bank mortgage. It is to be borne in mind that the objection to the validity of the plaintiff's mortgage is urged by a purchaser under the Bean mortgage, executed after the assent of November, 1874, had been obtained, to defeat a prior mortgage taken in good faith on an advance of money to the corporation for the payment of its debts, of which mortgage both Bean and the appellants had full notice when the second mortgage was executed. They were also chargeable with notice of the assent of the stockholders given in November, 1874. It is true they had no actual notice. But they knew of the plaintiff's mortgage. They were put upon inquiry as to the fact whether the mortgage had been authorized by the stockholders of the iron company, assuming that such authorization, although not filed, would make the mortgage valid. They made no inquiry of the plaintiff, or of the officers of the iron company. Indeed the inference is that they forbore to prosecute any inquiry upon the subject. Having omitted to inquire, they are chargeable with a knowledge of the facts which an inquiry would have disclosed.

The literal reading of the proviso in the act of 1864, makes the obtaining and filing of the assent of stockholders, conditions precedent to the mortgaging of corporate property. The object of the legislature in requiring such assent, was the protection of stockholders against improvident, collusive, or unwise acts of the trustees, the governing body of the corporation in incumbering the corporate property. (*Greenpoint Sugar Co.* v. *Whitin,* 69 N. Y. 333.) That the enactment was in the interest of stockholders is indicated by their designation as the assenting body. The policy of requiring the stockholders in manufacturing corporations to be consulted before the trustees should be permitted to mortgage the corporate property, is first found in the act of 1822, amending the act of 1811, for the incorporation of manufacturing companies. The stockholders of a corporation are the equitable owners of the cor-

porate property. The trustees are the managers. The act of 1822 and the act of 1864, put it in the power of the stockholders to prevent any incumbrance of the corporate property by the act of the trustees alone. But suppose the trustees of a manufacturing corporation should execute a mortgage without their consent. May not the stockholders subsequently ratify the act of their *quasi* agents, and by a subsequent assent validate the originally unauthorized transaction? The power to do so is consistent with the policy upon which the proviso in the act of 1864 proceeds. It may be for the interest both of the corporation and of the stockholders, that the unauthorized mortgage should be confirmed, or justice and equity may require it. What the stockholders might originally have done, may they not afterward do, and may not their subsequent assent be regarded as equivalent to an original authority, at least may not this be so when there are no intervening rights? This point was referred to in the opinion of CHURCH, Ch. J., in *Greenpoint Sugar Co.* v. *Whitin,* but was not decided. The learned chief judge in that case referred with approval to the opinion of DUER, J., in 2 Sandf. 137, giving a construction to the provision in the Revised Statutes forbidding a conveyance, assignment, or transfer by a bank of any of its effects, unless authorized by a *previous resolution* of its board of directors, in which opinion that learned jurist, after declaring that a subsequent resolution was equal to an original authority, added, " it is sufficient to say that the assignment is valid from the time that the sanction of the board had been given to it, and we are quite certain that in this, although we may not follow the words of the statute, we fully satisfy their meaning and policy." The policy of the act of 1864 requiring the assent of stockholders to the mortgaging of corporate property, is carried out by a subsequent as well as by a prior assent, and we think the intent and spirit of the statute permits the validating of a mortgage by an assent subsequent to its execution. Such assent makes the instrument as of the time it is given a valid mortgage. It is the precedent act upon which its validity depends. It would be a matter of form merely to require the

execution of a new mortgage in order to give effect to the action of the stockholders.

But it is insisted that the filing of the assent in the proper clerk's office, is, also, under the statute, an indispensable condition to the creation of a valid mortgage on corporate property. It is conceded that Wayne was the proper county in which to file the assent, and that by mistake it was filed in Monroe county. The question on this branch of the case is, whether as against a subsequent mortgagee with notice, the omission to file the assent makes the prior mortgage a nullity. The statute does not declare that an omission to file the assent shall render the security void. The effect of such omission in this case must be determined from a consideration of the nature of the omitted act, the purpose of the requirement, and for whose protection and benefit it was made. Compliance with the condition of the statute involves the performance of two separate and successive acts, viz.: the procuring of the assent of the requisite number of stockholders and the filing of such assent in the proper clerk's office. The first involves an application to the stockholders, and, on their part, consideration, judgment and final determination, and on the part of assenting stockholders, a written expression of their conclusion. The second is the merely formal act of depositing for record the evidence that the requisite assent has been obtained. The statute does not, in terms, impose upon the corporation the duty of filing the assent. But this duty naturally devolves upon the corporation, which presumptively is the actor in procuring the assent, to enable it to execute the mortgage. If the object of the statute in requiring the filing of the assent was the protection of creditors or subsequent incumbrancers, a different question would be presented. But the filing of the assent was unnecessary for that purpose. If the mortgage is recorded, the record is constructive notice of the lien. If unrecorded, a subsequent purchaser or mortgagor in good faith, without notice, whose deed or mortgage should be first recorded, would, under the general rule of law, acquire priority. The purpose of the statute in requiring the assent to be filed, seems to have been to perpetuate the evidence of the fact, and to

free titles acquired under mortgages by corporations from the uncertainty which would attend them if the extrinsic fact of assent was not made a matter of public record. The consent of stockholders is the important and essential thing. The filing is formal and subsidiary. The jurisdiction of equity to supply formalities to carry out the intention of parties has been frequently exerted. Can it be doubted that a corporation having in its possession the assent of stockholders to an existing mortgage not filed, could be compelled, at the instance of the mortgagee, to file the assent and thereby complete the record of the transaction? Would the corporation be heard to allege as a defense to a mortgage that although assented to, the evidence of the assent was not recorded? We think not; and we are of opinion that a subsequent mortgagee or purchaser stands in no better position.

To permit the defendant to profit by the neglect of the corporation to file the assent, or by the mistake of the plaintiff's attorney, would be, under the circumstances, most inequitable. Even if the filing of the assent was essential to complete the plaintiff's right, that may now be done as of the time the assent was given. (See *Russel* v. *Russel*, 1 Bro. C. C. 269; 1 Lead. Cas. in Eq. 440, and notes.)

The act of 1875 (Chap. 88) does not evince a legislative construction of the act of 1864 adversely to this opinion. We are satisfied that the defense to this plaintiff's mortgage was properly overruled upon a construction of the statute itself, and it is unnecessary to advert to the other grounds urged in support of the judgment.

The judgment should be affirmed.

All concur.

Judgment affirmed.