### BLACK v. ELLIS.

(Supreme Court, Appellate Division, First Department. December 11, 1908.)

CORPORATIONS (§ 477*)—CHATTEL MORTGAGES—EXECUTION—CONSENT OF STOCKHOLDERS.

Stock Corporation Law (Laws 1890, p. 1066, c. 564) § 2, as amended by Laws 1901, p. 961, c. 354, and Laws 1905, p. 2113, c. 745, authorizes the execution of mortgages by a corporation with the written consent of two-thirds of the stockholders or by vote at a special meeting, a certifi-

---

cate of which is required to be filed with the county clerk or register. *Held* that, where a corporation took over a lease requiring the actual execution of a chattel mortgage by the lessee to secure liquidated damages in case of breach, the execution and filing of a mortgage by the corporation in compliance with such lease with the knowledge and consent of two-thirds of the stockholders would not be set aside as void in a suit by the corporation's receiver because the statutory consent in writing had not been filed with the county clerk.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1862; Dec. Dig. § 477.*]

Ingraham and McLaughlin, JJ., dissenting.

Appeal from Special Term.

Action by William H. Black against Charles E. Ellis to set aside a chattel mortgage. From a Special Term judgment dismissing the complaint on the merits (58 Misc. Rep. 391, 111 N. Y. Supp. 347), plaintiff appeals. Affirmed.

Argued before PATTERSON, P. J., and INGRAHAM, Mc-LAUGHLIN, CLARKE, and HOUGHTON, JJ.

Edgerton, Allen & Dean (Charles A. Edgerton, of counsel, and Garrard Glenn, on the brief), for appellant.

Maurice S. Hyman, for respondent.

CLARKE, J. This appeal is taken from the judgment alone, and upon the judgment roll. The questions, therefore, arise upon the exceptions to the conclusions of law stated in the decision.

The plaintiff, the receiver of the Stirling Hotel Company, a domestic corporation, brings this action to set aside a chattel mortgage as null and void, and to have the same discharged and canceled of record. The findings of fact set forth that the defendant is, and since January 17, 1905, has been, the owner of the premises 208 and 210 West Fifty-Sixth street. The premises were first leased from the previous owners, defendant's grantors, on July 23, 1904, by one Annie M. Anderson. This lease was for a period of 21 years, 2 months, and 8 days, beginning July 23, 1904, at an annual rental of $19,000. The eighteenth clause of said lease provided:

"And the said tenant hereby covenants and agrees to pay to the said landlord in case of any breach for default by her in any of the covenants and agreements on her part herein agreed to be kept and performed, the sum of $7,500 which is to be taken and received by the said landlords as liquidated damages for said breach and not by way of penalty."

The nineteenth clause provided as follows:

"And the said tenant does hereby covenant and agree that she will secure the payment of the said $7,500 by executing to the said landlords at the time of the execution of this lease, a chattel mortgage for that amount upon certain household furniture and chattels belonging to her and stored at No. 60 West 39th Street, Borough of Manhattan, City of New York, and also upon household furniture and chattels in the premises hereby demised, and this day sold to the tenant by the said landlords, * * * and said tenant further covenants and agrees, as one of the conditions of this lease, that on or before July 1st in each and every year of the term hereby demised to make, execute and deliver to said landlords a new chattel mortgage in proper shape and form so as to entitle it to be filed and to be a first lien upon the household furniture and chattels hereinbefore agreed to be covered by the chattel mortgage given simultaneously herewith. * * *"

This chattel mortgage to secure the payment of the $7,500 provided for in the eighteenth clause, by way of liquidated damages for a breach, was duly executed by Annie M. Anderson on July 23, 1904, and was delivered and recorded. On the 27th of July, four days thereafter, said Anderson transferred her entire interest in and to said lease to the Stirling Hotel Company, and did at or about the same time deliver to the said company all the furniture then on said premises, and all of the furniture and furnishings mentioned and described in the nineteenth clause of the lease between Gunn and Grant, defendant's grantors, and Anderson, subject to the chattel mortgage covering the furniture and furnishings hereinabove described. As part of the consideration for the sale of said chattels and transfer of the lease, the Stirling Hotel Company assumed all the obligations in said lease contained on tne part of the tenant to be performed, and accepted the title to said chattels subject to the lien and incumbrance of the chattel mortgage, and entered on the premises. Thereafter, on January 13, 1905, the fee of the premises was conveyed, and the chattel mortgage assigned to the defendant. The hotel company remained in possession until it was dispossessed in August, 1907, and attorned as tenant. When it was dispossessed it was indebted to the defendant for back rent on said lease in a sum exceeding $7,500, and is still so indebted.

The Stirling Hotel Company had not, during its years of occupancy, made or filed a new chattel mortgage each year, as required of Annie M. Anderson in the original lease and as agreed to by it. On the 20th day of March, 1907, under a threat of dispossession, it did execute and deliver to the defendant a chattel mortgage similar to the one executed by Anderson, and containing this additional clause:

"These presents being given in conformity with a clause in said lease that the chattel mortgage mentioned therein should be re-executed and re-delivere¹ yearly by the tenant to the landlord; these presents being to ratify and confirm and in all respects to carry out the provisions in said lease contained, relating to said chattel mortgage."

The court has found as a matter of fact that the chattel mortgage dated March 20, 1907, was executed and delivered without the written consent of at least two-thirds of the stockholders of the Stirling Hotel Company having first been filed in the office of the clerk of the county of New York, and that such written consent has never been filed therein; that prior to the execution and delivery of said chattel mortgage no stockholders' meeting was called to consider the question of giving or executing said chattel mortgage, nor was any notice of stockholders' meeting for such purpose ever sent to the stockholders of said corporation; that the question of giving said chattel mortgage was never considered or discussed at a stockholders' meeting, nor does the minute book of the meetings of the stockholders contain any record of an assent of any of the stockholders to the giving thereof, or any reference to said chattel mortgage whatever. The court also found that at least two thirds of the stockholders were aware of the execution and delivery of the mortgage prior to its delivery, and that the remaining stockholder had no such knowledge. But it further found:

"That * * * said chattel mortgage was executed by the proper officers of the said company with the knowledge and consent of George O. Gillingham,

* * * Alice B. Scott, * * * and Ella L. Boon, * * *. who constituted the entire board of directors, and all the officers of said company, and were the holders of more than two-thirds of the issued capital stock of said corporation."

There was but one other stockholder, Annie M. Anderson, the original lessee who had executed the original chattel mortgage. She had no knowledge of the execution of the mortgage by the company, although she had transferred her lease and furniture to the company subject to the conditions of the mortgage.

Upon these findings of fact, the learned court drew the conclusion of law "that the said mortgage was not given or accepted in violation of section 2 of the stock corporation law (Laws 1890, p. 1067, c. 564), as it was, and at all times remained, a valid lien upon the property therein covered and described"; and that "the defendant was entitled to judgment that the complaint be dismissed upon the merits." To these conclusions of law, plaintiff duly excepted, and from the judgment entered upon said decision appeals.

A corporation is an artificial entity created by law. Its powers, rights, obligations, duties, and limitations are those, and those only, granted, permitted, allowed, and prescribed by law. Its right to do business, to acquire, to hold, and dispose of property, is that, and only that, conferred upon it by law. Section 2 of chapter 40, p. 55, of the Laws of 1848, the first general corporation act relating to manufacturing corporations, authorized corporations formed thereunder to purchase, hold, and convey real estate for corporate purposes, but prohibited them from mortgaging or giving any lien thereon. Of this provision, the Court of Appeals said, in Rochester Savings Bank v. Averell, 96 N. Y. 467:

"The Legislature in creating corporations may grant or withhold such powers as it sees fit, and the prohibition against mortgaging in the act of 1848 was absolute and unqualified."

This restriction was modified by chapter 517, p. 1154, of the Laws of 1864, which permitted such corporations to mortgage their real estate to secure the payment of the corporate debts:

"Provided that the written assent of the stockholders owning at least two-thirds of the capital stock of such corporation shall first be filed in the office of the clerk of the county where the mortgaged property is situated."

Of this, the Court of Appeals said in the Rochester Savings Bank Case, supra:

"The act of 1864 does not in terms repeal the prohibition in the original act, but is a new provision containing the permission to mortgage for the special purpose mentioned, but attaching thereto the proviso above quoted."

By chapter 481, p. 1009, of the Laws of 1871, the prohibition was removed as to personal property as well, but the same proviso was annexed.

When the first general statute for the organization of business corporations other than manufacturing companies was enacted (chapter 611, p. 755, of the laws of 1875), it allowed, by section 13 thereof, corporations to borrow money and issue their bonds therefor, but by

chapter 394, p. 656, of the laws of 1888, the same proviso was attached to corporations organized under the laws of 1875 as was attached to manufacturing corporations organized under the statute of 1848. The statute in force when the mortgage under consideration was given was section 2 of the stock corporation law (Laws 1892, p. 1824, c. 688), constituting chapter 36 of the General Laws as amended by chapter 354, p. 961, of the Laws of 1901, and chapter 745, p. 2113, of the Laws of 1905. Said section, as so amended, provided as follows:

"In addition to the powers conferred by the general corporation law, every stock corporation shall have the power to borrow money and contract debts, when necessary for the transaction of its business, or for the exercise of its corporate rights, privileges or franchises, or for any other lawful purpose of its incorporation; and it may issue and dispose of its obligations for any amount so borrowed, and may mortgage its property and franchises to secure the payment of such obligations, or of any debt contracted for said purposes. Every such mortgage, except purchase money mortgages and mortgages authorized by contracts made prior to May 1st, 1891, shall be consented to by the holders of not less than two-thirds of the capital stock of the corporation, which consent shall be given either in writing or by vote at a special meeting of the stockholders called for that purpose, upon the same notice as that required for the annual meetings of the corporation; and a certificate under the seal of the corporation that such consent was given by the stockholders in writing, or that it was given by vote at a meeting as aforesaid, shall be subscribed and acknowledged by the president or a vice-president and by the secretary or an assistant secretary of the corporation, and shall be filed and recorded in the office of the clerk or register of the county wherein the corporation has its principal place of business. * * *"

This question is thus squarely presented: Is a mortgage executed and filed by a corporation with the knowledge and consent of two-thirds of its stockholders to be canceled and set aside as null and void in an action brought by the receiver of said corporation because said consent was not in writing and filed in the office of the county clerk?

In Greenpoint Sugar Co. v. Whitin, 69 N. Y. 328, the written assent made and filed did not specify the amount of the mortgage. The court held that the written assent produced was a sufficient compliance with the statute, and, in discussing the object of the statutory provision, said:

"It is quite manifest that the prohibition in the act of 1848 against mortgaging corporate property, and the qualifications in the act of 1864 to the right of mortgaging, were created for the benefit and protection of the stockholders. * * * The act of 1864 removed the restriction substantially imposed by the previous statute, with a proviso requiring only that those interested—the stockholders—should consent, thus plainly evincing that the purpose and intent was to protect the stockholders from improvident or corrupt acts of the officers of the company. There is nothing showing that the legislative policy regarded the mortgaging of corporate property improper per se, but the policy adopted indicates a fear of its improper exercise, and an intention to guard against it."

The court said further:

"The reasonable construction of the statute is that the mortgage is valid from the filing of the assent. * * * The validity of the mortgage is made to depend upon the filing of the assent, and it follows that from the time of filing the mortgage is valid. It is unnecessary to go to that extent, but I have no doubt that the filing at the time of recording the mortgage, which

is the final step in perfecting the security, is sufficient substantially, if not literally."

In Paulding v. Chrome Steel Co., 94 N. Y. 334, the court said:

"The money was advanced under an agreement by the trustees of the company that its payment should be secured by chattel mortgage, and this was executed on the 7th of October, 1874, by its president and secretary, under the direction of its trustees, who were also the only stockholders of the company. It conveyed the property described in the complaint, and after the maturity of the debt in September, 1877, a new mortgage was executed by the same authority in lieu of, and as a substitute for, the one of 1874, conveying the same property and securing the same debt. But in neither case was the written assent of the stockholders, or any of them, filed in the office of the clerk of the county, as required by the statute. Sess. Laws, 1871, p. 1009, c. 481, § 2. The debt, however, remained due and unpaid, and prior to the 22d of December, 1879, the formal consent of the stockholders required by this act, and the act of 1878, p. 172, c. 163, was given and filed, and on that day the mortgage in question was duly executed to secure the same debt, and, as the court finds, 'in lieu of, and as a substitute for the said two prior mortgages and each of them, and for the purpose of giving security, and in pursuance and fulfillment of the original agreement' made by the company 'prior to the loaning of the money, and in consideration of and reliance upon which the said money was loaned.' * * * The learned counsel for the respondent argues that the agreement to which I have referred, and under which the mortgage was given, was itself invalid for want of that previous assent which the statutes of 1871 and 1878, supra, required. That assent has been considered by us as exacted for the protection and benefit of stockholders against improvident or corrupt acts of the officers of the corporation, and not because the Legislature regarded the mortgaging of corporate property as improper per se, and it is at least doubtful whether any but stockholders can complain that the condition was not complied with. Greenpoint Sugar Co. v. Whitin, 69 N. Y. 328. The question, however, does not arise here, for neither the policy of the act nor its beneficent action can be invoked, for the agreement was in fact made and the mortgage authorized by all the stockholders. They were, it is true, also trustees, but their assent in that capacity must bind them in both characters."

In Rochester Savings Bank v. Averell, 96 N. Y. 467, the mortgage was recorded in Wayne county, January 31, 1874. No consent in writing of stockholders owning two-thirds of the stock of said corporation was given prior to the execution of the mortgage. Such a consent was signed, however, in November, 1874, which was dated January 3, 1874, and the mortgage was thereupon reacknowledged and again recorded. This consent, plaintiff's attorney, instead of filing in the office of the county clerk of Wayne county, where the mortgaged property was situated, filed in Monroe county. The court said:

"No assent of the stockholders having been obtained, it was invalid and created no present lien upon the property. Vail, Rec., v. Hamilton, 85 N. Y. 453. In the case cited, this court affirmed a judgment setting aside, at the instance of a receiver, a mortgage executed by a corporation organized under the act of 1848, on the ground that the assent of the requisite number of stockholders had not been obtained. The case is an authority for the proposition that the assent of stockholders is an indispensable condition to the creation of a valid mortgage under the act of 1864. The determination of the present controversy turns, in our view, upon the legal effect of the subsequent assent of November, 1874. The question is whether the assent then given, although not filed in Wayne county, operated, as between the plaintiff and the appellants, to validate the savings bank mortgage. * * * The literal reading of the proviso in the act of 1864 makes the

obtaining and filing of the assent of the stockholders conditions precedent to the mortgaging of corporate property. The object of the Legislature in requiring such assent was the protection of stockholders against improvident, collusive, or unwise acts of the trustees, the governing body of the corporation, in incumbering the corporate property. Greenpoint Sugar Co. v. Whitin, 69 N. Y. 328. * * * But suppose the trustees of a manufacturing corporation should execute a mortgage without their consent; may not the stockholders subsequently ratify the act of their quasi agents, and by a subsequent assent validate the originally unauthorized transaction? * * * The policy of the act of 1864 requiring the assent of stockholders to the mortgaging of corporate property is carried out by a subsequent as well as by a prior assent, and we think the intent and spirit of the statute permits the validating of a mortgage by an assent subsequent to its execution. Such assent makes the instrument, as of the time it is given, a valid mortgage. It is the precedent act upon which its validity depends. It would be a matter of form merely to require the execution of a new mortgage in order to give effect to the action of the stockholders. * * * The purpose of the statute in requiring the assent to be filed seems to have been to perpetuate the evidence of the fact, and to free titles acquired under mortgages by corporations from the uncertainty which would attend them if the extrinsic fact of assent was not made a matter of public record. The consent of the stockholders is the important and essential thing. The filing is formal and subsidiary. * * * To permit the defendant to profit by the neglect of the corporation to file the assent, or by the mistake of the plaintiff's attorney, would be, under the circumstances, most inequitable. Even if the filing of the assent was essential to complete the plaintiff's right, that may now be done as of the time the assent was given."

In Martin v. Niagara Falls Paper Manufacturing Co., 122 N. Y. 165, 25 N. E. 303, the court said:

"The court found as a fact that the consent was filed before the execution of the mortgage, and there is an exception to this finding. The evidence, as printed in the record, is that it was filed November 20, 1885. I assume this must be an error, as it is a date subsequent to the entry of the judgment appealed from. However this may be, the assent was given before the execution of the mortgage, and, no rights of creditors intervening, there was a sufficient compliance with the statute to make the mortgage valid as against the company and its stockholders."

In Lord v. Yonkers Fuel Gas Co., 99 N. Y. 547, 2 N. E. 909, the court, referring to the provisions permitting corporations to mortgage their property, said:

"With the prescribed consent of the stockholders, they are declared to be as competent as natural persons to secure the payment of their legitimate debts by mortgage upon their real or personal property. This power has been the subject of consideration in several cases which have come before this court since the passage of the act of 1864, and the view has been repeatedly expressed in those cases that the power should be liberally construed, and that a substantial compliance with its conditions, according to their spirit and intent, was all that was required."

Vail v. Hamilton, 85 N. Y. 453, is a direct authority for the proposition that a receiver is authorized to bring an action to set aside a mortgage upon the ground that the necessary assents thereto were not given; but in that case the court found as a fact that the written assent of the stockholders owning two-thirds of the capital stock was not filed, or at any time given to the execution of the mortgage.

In the case at bar, the court finds as a fact that the holders of more than two-thirds of the issued capital stock consented to the execution of said mortgage. As I read the decisions of the Court of Ap-

peals heretofore cited, interpreting this statute, enacted for the protection of stockholders against the improvident acts of their trustees, the important thing is the consent of the necessary two-thirds, the provision as to filing such consent being merely for the purpose of perpetuating the evidence of such consent. As upon this record we are concluded by the finding of the court upon the fact that such consent was given, and therefore the beneficent object of the statute accomplished, I think it is in entire accord with the adjudications upon the subject to hold, in an action in equity, that the mere failure to file proof of that fact, as required by the statute, did not render the mortgage made with such consent invalid and void. As the court said in Rochester Savings Bank v. Averell, supra:

"The jurisdiction of equity to supply formalities to carry out the intention of parties has been frequently exerted. Can it be doubted that a corporation, having in its possession the assent of stockholders to an existing mortgage not filed, could be compelled, at the instance of the mortgagee, to file the assent and thereby complete the record of the transaction? Would the corporation be heard to allege as a defense to a mortgage that, although assented to, the evidence of the assent was not recorded? We think not."

It follows, therefore, that the judgment appealed from should be affirmed, with costs to the respondent.

PATTERSON, P. J., concurs.

HOUGHTON, J. I concur in the views expressed by Mr. Justice CLARKE, and I think there is a further reason why the judgment should be affirmed.

The corporation took the property subject to the chattel mortgage given by Anderson, and took the assignment of the lease from her whereby it was agreed the mortgage should be kept alive. If the corporation chose to keep the property and the lease as it did, it was under obligation to keep the chattel mortgage alive as the lease provided. Being under such contractual obligation as a consideration of obtaining and holding title to the property and enjoying the lease, I do not think the statute as to consent of stockholders to giving a mortgage applies. The statute manifestly applies to creating a new incumbrance on corporate property, not to keeping alive one existing on property acquired subject to mortgage and under agreement to continue as a valid and subsisting lien.

INGRAHAM, J. (dissenting). As stated in the opinion of Mr. Justice CLARKE, the only question presented upon this appeal is upon the exception to the conclusion of law, no case having been made and settled, and the appeal being solely upon the judgment roll. The action is brought to declare null and void a chattel mortgage made by the Stirling Hotel Company to the defendant as security for the rent of certain premises leased by the defendant to one Anderson, and which lease had been assigned to the Stirling Hotel Company. This mortgage was dated the 20th of March, 1907, and thereafter filed in the office of the register of the county of New York. The complaint alleges that this mortgage was not given for a present consideration,

but was given, at a time when the corporation was insolvent, to secure the defendant for a past indebtedness, and in direct violation of section 48 of the stock corporation law (chapter 564, p. 1075, of the Laws of 1890, as amended by chapter 354, p. 970, of the Laws of 1901). It was further alleged that the said chattel mortgage is void and wholly invalid for the reason that it was executed and delivered without the consent of the stockholders of the said corporation, or of at least two-thirds thereof, as required by section 2 of the said stock corporation law.

The court found that on the 27th of July, 1904, the Stirling Hotel Company, a corporation incorporated under the laws of this state, occupied certain premises in the city of New York under a lease made by the plaintiff's predecessor in title to one Anderson; that on or about the 20th of March, 1907, the said corporation was indebted to the defendant for back rent in a sum exceeding $7,500, and was indebted to other creditors for about $15,000, which the corporation was wholly unable to pay; that the corporation was then wholly insolvent, and totally unable to pay its indebtedness or any considerable portion thereof, and that such insolvent condition was well known to the officers and stockholders of the said corporation; that on the 20th of March, 1907, the Stirling Hotel Company executed and delivered to the defendant a chattel mortgage covering certain personal property in the said hotel, which recited that this mortgage was given in conformity with the clause in the said lease of plaintiff's predecessors in title to Anderson by which it was agreed that the tenant should execute a chattel mortgage upon the personal property contained in the hotel to secure the rent to the landlord; that the chattel mortgage dated March 20, 1907, was executed and delivered without the written consent of at least two-thirds of the stockholders of the Stirling Hotel Company having first been filed in the office of the clerk of the county of New York, and that such written consent was never filed therein; that the stockholders of said corporation aggregating at least two-thirds thereof were aware of the execution and delivery thereof prior to its delivery; that the total number of shares of capital stock of the said corporation issued at the time was 135 shares; that one Boon, the president of the corporation, owned 35 shares; that one Gillingham, the vice president, owned 35 shares; that one Scott, the secretary and treasurer of the corporation, owned 35 shares; and one Anderson owned 30 shares; that Boon, Gillingham, and Scott, owing 105 shares of the 135 shares outstanding, had knowledge of the execution and delivery of the said chattel mortgage prior to its delivery to the defendant, but that Anderson, the owner of 30 shares of the capital stock of said corporation, had no knowledge of the execution and delivery of the said chattel mortgage prior to its delivery, nor was she at any time consulted in reference thereto; and that the said chattel mortgage was executed by the proper officers of the said company with the knowledge and consent of Boon, Gillingham, and Scott, they constituting the entire board of directors and all the officers of the company, and being the holders of more than two-thirds of the issued capital stock of the company.

There is no finding as to which officers of the company actually executed the chattel mortgage, and certainly there is no presumption that all three of these officers of the company joined in its execution or executed any instrument which would evidence their consent to the execution of the mortgage. I will assume that, if the owners of three-fifths of the capital stock of the company had actualy joined in the execution of the instrument either individually or as officers of the company, such an act would be a sufficient compliance with section 2 of the stock corporation law to sustain the instrument; but it certainly cannot be presumed that the president, vice president, and secretary and treasurer joined in the execution of this instrument, and it is necessary that all three of these officers should consent to the execution of the mortgage either in writing or by a vote at a special meeting of the stockholders called for that purpose to constitute the two-thirds required by the statute. The court found that there was no meeting of the stockholders called for that purpose at which this question was considered or the consent to the execution of the mortgage given; so to sustain the mortgage it must appear that the holders of not less than two-thirds of the capital stock of the corporation consented in writing to the execution of the mortgage. Certainly there is no such consent found by the court, nor can such a consent be inferred from any of the facts found, but the court found that no consent had been filed. Section 2 of the stock corporation law provides that every stock corporation—

"may mortgage its property and franchises to secure the payment of such obligations, or of any debt, contracted for said purposes. Every such mortgage, except purchase-money mortgages and mortgages authorized by contracts made prior to May 1st, 1891, shall be consented to by the holders of not less than two-thirds of the capital stock of the corporation, which consent shall be given either in writing or by vote at a special meeting of the stockholders called for that purpose, upon the same notice as that required for the annual meetings of the corporation; and a certificate under the seal of the corporation that such consent was given by the stockholders in writing, or that it was given by vote at a meeting as aforesaid, shall be subscribed and acknowledged by the president or a vice president and by the secretary or an assistant secretary of the corporation, and shall be filed and recorded in the office of the clerk or register of the county wherein the corporation has its principal place of business."

It is elementary that a corporation may only exercise the powers given to it, and this provision as to the power by a corporation to execute a mortgage which shall create a lien upon its property is a limitation of the power of the corporation to execute such a mortgage. Unless it complies with the conditions imposed by the Legislature, it had no power to execute a mortgage, and therefore it necessarily follows that a mortgage executed without a substantial compliance with this condition was ultra vires and void. The condition expressly requires that the consent should be evidenced in one of two forms: either by a written instrument signed by two-thirds of the stockholders, or by the vote of the stockholders at a meeting called for the purpose of giving such consent. It seems to me that a verbal consent of the stockholders would be entirely ineffectual to authorize the cor-

poration to exercise this power conferred upon it by the Legislature. Such a verbal consent might well have been given, because the stockholder giving it knew that it was not a compliance with the statute, and therefore would not of itself authorize the execution of the mortgage until a formal consent had been presented for execution or a meeting of the stockholders of the company called to consider the proposition. If the language of the statute means anything, it must mean that the consent of the holders of two-thirds of the capital stock of the corporation must be given in writing or at a special meeting called for the purpose of considering the question.

In Greenpoint Sugar Co. v. Whitin, 69 N. Y. 328, the court held that the validity of the mortgage is made to depend upon the filing of the assent, and that, from the time of filing such assent and the recording of the mortgage, the mortgage is valid. In Paulding v. Chrome Steel Co., 94 N. Y. 334, the mortgage was executed by the president and secretary under the direction of the trustees of the corporation, who were the only stockholders of the company, and it was held that that was a sufficient consent. And this was followed in the case of Rochester Savings Bank v. Averell, 96 N. Y. 467. In that case the court, following Vail, Rec'r, v. Hamilton, 85 N. Y. 453, held that the mortgage was invalid in the absence of the assent of the stockholders having been obtained, and created no lien upon the property, and that that case was an authority for the proposition that the assent of the stockholders is an indispensable condition to the creation of a valid mortgage; but, though the trustees of a manufacturing corporation had executed a mortgage without the consent of the stockholders, that the stockholders could subsequently ratify the act, and by a subsequent assent validate the original unauthorized transaction; and that such an assent made the instrument as of the time it is given a valid mortgage. In Martin v. Niagara Falls Paper Mfg. Co., 122 N. Y. 165, 25 N. E. 303, it seems to have been held that when the consent was actually given before the execution of the mortgage, and no rights of creditors intervening, there was a sufficient compliance with the statute to make the mortgage valid as against the company and its stockholders. In that case, however, it appears that there was a consent in writing actually executed by the stockholders and subsequently filed. But in no case where the consent of two-thirds of the stockholders was not evidenced by an instrument in writing or by a certificate of the officers of that corporation that it had been given at a stockholders' meeting called for that purpose was the mortgage sustained. That an action can be maintained by a receiver of a corporation to set aside a mortgage upon the ground that it had not been consented to by the stockholders was expressly held in Vail, Rec'r, v. Hamilton, supra, and that authority has never been questioned. In the absence of a finding that at least two-thirds of the stockholders had actually consented to the execution of the mortgage in the manner prescribed in the statute, it seems to me that the plaintiff was clearly entitled to a judgment setting aside the mortgage both for the benefit of stockholders and creditors.

For that reason, I think the judgment appealed from must be reversed, and a new trial granted, with costs to the appellant to abide the event.

McLAUGHLIN, J. (dissenting). The facts and the statutory provisions applicable to this case are set forth at length in the opinion of Mr. Justice CLARKE. The mortgage cannot be deemed a purchase-money mortgage, and in order to be valid, under section 2 of the stock corporation law (Laws 1890, p. 1066, c. 564), it was necessary that it should have been "consented to by the holders of not less than two-thirds of the capital stock of the corporation, which consent shall be given either in writing or by vote at a special meeting of the stockholders called for that purpose, upon the same notice as that required for the annual meetings of the corporation; and a certificate under the seal of the corporation that such consent was given by the stockholders in writing; or that it was given by vote at a meeting as aforesaid, shall be subscribed and acknowledged * * * and filed and recorded in the office of the clerk or register of the county wherein the corporation has its principal place of business."

The provision of the statute quoted was not complied with, nor was any attempt made to comply with it. Holders of not less than two-thirds of the capital stock did not consent "either in writing or by vote at a special meeting of the stockholders called for that purpose," nor was any certificate filed and recorded. But it is suggested that the mortgage is nevertheless valid because it was executed by the proper officers of the corporation, and all of the directors had knowledge of that fact, did not object to it, and that they held more than two-thirds of the stock; in other words, that because the directors of the corporation held more than two-thirds of the stock, and knew that the mortgage was given, this is a sufficient compliance with the statute. The answer to the suggestion is that a corporation can only give a valid mortgage by complying with the statute, which expressly provides that holders of two-thirds of the stock must either consent in writing or by vote at a meeting called for the purpose of determining whether or not the mortgage shall be given. It is this act of the stockholders, evidenced either in one way or the other, of which evidence is filed and recorded, that gives validity to the mortgage. Except for the statute, a corporation could not give a mortgage. There are cases where a bona fide attempt was made to comply with the statute, but where its provisions had not been strictly fulfilled, in which it was held that the mortgage was valid. Thus in Greenpoint Sugar Co. v. Whitin, 69 N. Y. 328, the written consent did not specify the amount of the mortgage; and in Rochester Savings Bank v. Averell, 96 N. Y. 467, error was made in filing the consent. But there is no authority, so far as I have been able to discover, which holds that a corporation may give a valid mortgage, when no attempt has been made to comply with the statute requiring the written consent or a vote of the stockholders and the filing and recording of evidence thereof. In Vail v. Hamilton, 85 N. Y. 453, a mortgage was set aside on the ground

that the requisite consent had not been obtained in an action brought by the receiver of the corporation, as the present one is. That case is cited with approval in Rochester Savings Bank v. Averell, supra. Judge Andrews, referring to it, said:

"The case is an authority for the proposition that the assent of stockholders is an indispensable condition to the creation of a valid mortgage under the act of 1864."

It is also urged that the mortgage may be held valid inasmuch as the Trial Court found as a fact that the holders of more than two-thirds of the issued capital stock consented to its execution. It is perfectly evident from the decision what was meant by this finding, when read in connection with the other findings. There is an express finding that the mortgage "was executed and delivered without the written consent of at least two-thirds of the stockholders, * * * and that such written consent has never been filed * * *"; that no stockholders' meeting was called to consider the question of giving or executing the mortgage, nor was any notice of a stockholders' meeting for such purpose ever sent to the stockholders of the corporation; that the question of giving the mortgage was never considered or discussed at a stockholders' meeting, nor does the minute book of the meetings of the stockholders contain any record of any assent of any of the stockholders to the execution of it; and that a minority stockholder, holding a considerable number of shares, had no knowledge of the execution of the mortgage prior to its delivery, nor was she at any time consulted in reference thereto. Then comes the finding upon which it is said that holders of two-thirds of the stock consented, which is that:

"Said chattel mortgage was executed by the proper officers of the said company with the knowledge and consent of George C. Gillingham, above named, Alice B. Scott, above named, Ella L. Boon, above named, who constituted the entire board of directors and all of the officers of said company, and were the holders of more than two-thirds of the issued capital stock of said corporation."

These persons consented to the execution of the mortgage in one sense; that is, they did not object to it. They had knowledge of it because they were directors of the corporation, and presumably two of them at least, being officers of the corporation, signed the instrument. But this is not the consent which the statute requires. To so hold is to entirely disregard the provisions of the statute and permit the validity of a corporate mortgage to depend upon oral proof that the holders of two-thirds of the stock knew of the mortgage, did not object, and thereby consented to it. It is not difficult to see that this would furnish an opportunity for fraud, to say nothing of the uncertainty and confusion which would arise as to the validity of instruments of this kind.

The fact that the corporation kept the mortgaged property and assumed the lease, which provided for the continuance of the mortgage, cannot affect the question, because the corporation could execute a valid mortgage only by complying with the statute, and could not by contract vary these requirements. There was no attempt to comply with the statute, and, however inequitable the result may seem (Wood

& Selick v. Ball, 190 N. Y. 217, 83 N. E. 21), I am of the opinion that the mortgage is invalid.

The judgment appealed from, therefore, should be reversed and a new trial ordered, with costs to appellant to abide event.