SECURITY DISCOUNT ASSOCIATES, INC., Appellant-Respondent, v. LYNMAR HOMES CORP. et al., Defendants. JOHN J. HASSETT, JR., Respondent, and CHARLES REIBER, Respondent-Appellant.

Second Department, June 12, 1961.

*Seymour C. Simon* of counsel (*Sylvan D. Freeman* with him on the brief; *Dreyer & Traub*, attorneys), for appellant-respondent.

*Irving I. Steinman* of counsel (*Harry T. Sherman* with him on the brief; *Sussman & Flax*, attorneys), for respondent-appellant.

*Arthur R. Wilson* for respondent.

CHRIST, J. In this mortgage foreclosure action, the controversy relates to the validity and priority of several mortgages which were executed and delivered by defendant Lynmar Homes Corp. (hereinafter called Lynmar) to plaintiff, Security Discount Associates, Inc. (hereinafter called Security), and to defendants John J. Hassett, Jr., and Charles Reiber, on real property situated in the Town of Huntington, Suffolk County, New York.

Plaintiff corporation, Security, held two mortgages: the first in the amount of $3,700, dated November 4, 1957 and recorded on November 8, 1957; the second in the amount of $7,300, dated January 15, 1958 and recorded on January 20, 1958 at 9:05 A.M.

Both were personally delivered to the County Clerk of Suffolk County for recording. A certificate from Lynmar's stockholders consenting to Security's second mortgage was recorded on January 23, 1958. Such a stockholders' consent to Security's first mortgage had been obtained but it was not recorded. Both mortgages were consolidated and the time of payment extended by an agreement made on January 15, 1958.

Defendant Hassett's mortgage in the amount of $5,000, dated January 15, 1958, together with a certificate of consent from Lynmar's stockholders, was recorded on January 20, 1958 at 10:47 A.M., the mortgage having been received by mail that morning in the County Clerk's office. While the exact time of such mail delivery was not established, the County Clerk's mail carrier testified that delivery was made by him regularly before 9:00 A.M. Nor does the proof show whether the Hassett mortgage was executed before or after Security's second mortgage which was made on the same day (Jan. 15, 1958).

Defendant Reiber's mortgage was executed on October 9, 1957 and was recorded on November 4, 1957. By error of one of the deputy clerks, the mortgage was entered in the mortgagor book of the Town of Islip instead of the Town of Huntington. The error was discovered on July 23, 1958 (after the recording of the Security and Hassett mortgages), when a proper entry was made in the mortgagor book of the Town of Huntington.

As indicated, the consent of Lynmar's stockholders to Security's first mortgage of November 4, 1957 was executed but not recorded. The mortgage recites the due and sufficient authorization by stockholders of Lynmar. There was no proof of Lynmar's stockholders' consent to the execution of the Reiber mortgage, which contains no recital of such consent; and as to the Reiber mortgage the Special Term found that no certificate of stockholders' consent was executed or recorded. On this appeal Reiber does not claim that the assent of the stockholders of Lynmar to his mortgage had been obtained prior to its execution. Instead, he takes the position that the omission of the stockholders' consent does not render his mortgage invalid as against the subsequent mortgages.

One of the questions presented here is the effect, if any, of the failure to record Lynmar's stockholders' consent to the Security first mortgage, and of the absence of such stockholders' consent to the Reiber mortgage.

Section 16 of the Stock Corporation Law provides that the consent to the execution of a corporate mortgage must be given by the holders of two thirds of the outstanding stock, "either in writing, or by vote at a metting of the stockholders called

for that purpose * * *. If the property to be mortgaged consists of real estate, a certificate that such consent was given by the stockholders in writing, or that it was given by vote at a meeting as aforesaid, shall be subscribed, acknowledged and verified by the president or a vice-president and by the secretary or an assistant secretary of the corporation, and shall be recorded in the office of the recording officer of each county within the state in which the mortgage is filed or recorded".

In requiring the consent to be filed, the purpose of the statute is to "free titles acquired under mortgages by corporations from the uncertainty which would attend them if the extrinsic fact of assent was not made a matter of public record" (*Rochester Sav. Bank* v. *Averell,* 96 N. Y. 467, 476). The failure to record the assent of stockholders where their consent was given does not affect the validity of the mortgage. As was said in *Rochester Sav. Bank* v. *Averell (supra,* p. 476), "The consent of stockholders is the important and essential thing. The filing is formal and subsidiary."

Again, in *Matter of Manufacturers Trust Co.* v. *Ralph* (300 N. Y. 411, 416), the Court of Appeals, in discussing section 16 of the Stock Corporation Law, stated that a corporate mortgage "is properly executed and constitutes a valid lien even though no certificate is ever filed, as long as the essential consent was actually given [citing cases]."

Special Term correctly held that the validity of Security's first mortgage, dated November 4, 1957, was not affected by the failure to record the executed stockholders' consent. The mortgage recites that its execution was duly consented to and authorized by the stockholders. This recital constitutes "presumptive evidence that the execution of such mortgage has been duly and sufficiently consented to and authorized by stockholders as required by any provision of law" (Stock Corporation Law, § 17). That presumption was not rebutted at the trial; and, upon the evidence in this case, Special Term was justified in finding that a consent actually had been given at the time the mortgage was executed.

The Reiber mortgage, with respect to which there was no proof of stockholders' consent, stands on a different footing. Without the necessary assent of the stockholders, that mortgage is invalid and creates no lien (*Leffert* v. *Jackman,* 227 N. Y. 310; *Maryland Cas. Co.* v. *Schaefer Constr. Co.,* 141 Misc. 629, affd. 232 App. Div. 766, affd. 256 N. Y. 663; *Rochester Sav. Bank* v. *Averell,* 96 N. Y. 467, *supra; Vail* v. *Hamilton,* 85 N. Y. 453; *Cohn* v. *Gersh Realty Corp.,* 137 Misc. 245, affd. 233 App. Div. 795).

If a mortgage without the essential consent of the stockholders is void, it must be held void for all purposes. In *Leffert* v. *Jackman* (*supra,* p. 314), where the mortgage was successfully attacked by a corporation's general assignee for the benefit of creditors, the Court of Appeals stated: "The question whether the purpose of the statute is simply to protect the stockholders from careless, improvident or corrupt acts of the officers of a corporation or is intended to require the consent of the stockholders as provided in the statute in every case to make legal and effectual a mortgage on corporate property, has been a subject for consideration in this, and other states where similar statutes exist, and the conclusions reached are not uniform." The Court of Appeals then declared that in this State "the answer to the question was unmistakably given * * * in *Vail* v. *Hamilton* [*supra*]," where the court affirmed a judgment annulling a corporate mortgage executed without stockholders' consent.

It follows that, since no stockholders' consent to the Reiber mortgage was ever executed or recorded, and, as noted above, since Reiber does not claim that such consent was actually procured, his mortgage is invalid and created no lien against the real property of Lynmar. Consequently, we do not reach the question as to the effect of the County Clerk's error in indexing that mortgage, and whether Reiber should be held responsible for such error.

With the Reiber mortgage eliminated, and with the Security first mortgage entitled to priority over the Hassett mortgage, there remains to be considered the priority of lien as between the Security second mortgage and the Hassett mortgage, both of which were executed on January 15, 1958 and recorded on January 20, 1958. As stated, the Hassett mortgage was mailed to the County Clerk and received by him in the first mail which arrived before 9:00 A.M., but it was not actually recorded until 10:47 A.M. In the meantime, the Security second mortgage was presented by hand for recording and was actually recorded at 9:05 A.M.

Section 317 of the Real Property Law reads as follows: "*Order of recording* Every instrument, *entitled to be recorded,* must be recorded by the recording officer in the order and as of the time of its delivery to him therefor, and is considered recorded from the time of such delivery." (Emphasis supplied.)

Within the context of the statute, the word "delivery" necessarily connotes more than the mere receipt by mail of a sealed envelope containing an instrument to be recorded. Whether the instrument is "entitled to be recorded" can only

be determined after the mail shall have been opened and after the contents shall have been inspected in the ordinary course of the County Clerk's business. One who resorts to the method of mail delivery, instead of the surer and more expeditious course of personal delivery — which prudence and diligence would normally suggest — should reasonably expect that some delay will necessarily ensue between the time the mail is received and the time it is opened and its contents inspected preparatory to recording.

The plain purpose of the recording statute is to give notice to subsequent purchasers and mortgagees. Section 317 of the Real Property Law should be construed in furtherance of such legislative intent. No one searching the records for prior mortgages could conceivably have notice of the contents of an unopened envelope received by mail. Hence, within the meaning of the statute the arrival by mail of an instrument in the County Clerk's office should not be deemed to constitute delivery to the recording officer.

It should be noted that if, as Special Term held, a mortgage is in law recorded when it is delivered by mail to the County Clerk for that purpose, then the insoluble problem would arise as to which of two instruments affecting the same property is entitled to priority when both instruments shall have arrived in the same mail.

In construing section 317 of the Real Property Law, we must bear in mind the legislative purpose. The letter of a statute is not to be followed when it leads away from the legislative intent (see *Matter of New York Post Corp.* v. *Leibowitz*, 2 N Y 2d 677, 685–686; and cases there cited). In reading the word "delivery" to mean the time when the mailed instrument is found entitled to be recorded, we give effect to the legislative intent. There was no proof in this case as to the time when the mortgage mailed by Hassett was inspected. From the fact that it was stamped, "Recorded at 10:47 A.M.," it is safe to assume that the Hassett mortgage was inspected for recording after 9:05 A.M., the time of the recording of the Security mortgage.

We conclude, therefore, that the Security second mortgage, dated January 15, 1958, in the amount of $7,300, is entitled to priority over the Hassett mortgage.

The judgment insofar as appealed from by the plaintiff, should be reversed on the law and the facts, without costs, and judgment should be directed declaring that the lien of defendant Hassett's mortgage is subject and subordinate to the lien of both of plaintiff's mortgages.

The judgment insofar as appealed from by the defendant Reiber, should be affirmed, without costs.

Findings of fact inconsistent herewith should be reversed and new findings should be made as indicated below.

BELDOCK, Acting P. J., UGHETTA, KLEINFELD and BRENNAN, JJ., concur.

On plaintiff's appeal: Judgment insofar as appealed from and particularly its second decretal paragraph, reversed on the law and the facts, without costs, and judgment directed declaring that the lien of defendant Hassett's mortgage is subject and subordinate to the lien of both of plaintiff's mortgages.

On defendant Reiber's appeal: Judgment insofar as appealed from, affirmed, without costs.

Finding of fact No. 20, which recites that the Hassett mortgage was recorded prior to plaintiff's second mortgage of $7,300 and prior to the consolidation agreement, is reversed. In lieu thereof, the following findings of fact are made: That at 9:05 A.M. on January 20, 1958, plaintiff's second mortgage and the consolidation agreement were delivered by hand to the County Clerk of Suffolk County for recording; that they were actually recorded at that time; and that defendant Hassett's mortgage, although delivered by mail to the County Clerk at or before 9:00 A.M. on the same day, was not actually recorded until 10:47 A.M. of that day.