(58 Misc. Rep. 391.)

### BLACK v. ELLIS.

(Supreme Court, Special Term, New York County. March, 1908.)

1. CORPORATIONS—CHATTEL MORTGAGE—RENEWAL—CONSENT OF STOCKHOLDERS.

The lessee of a hotel mortgaged the furniture to secure the lease and assigned the lease to a corporation, which covenanted to perform its conditions. The lease provided that the tenant would annually execute a new chattel mortgage, to be a first lien on the property, and that the failure of the landlord to insist on the strict performance of any condition should not be a waiver for the future of any such condition. Three years thereafter, the original mortgage not having been renewed, three directors of the corporation, who owned more than two-thirds of the capital stock, agreed to give a new mortgage on the same conditions, without holding any meeting of the stockholders or without execution of the consent required of stockholders in such a case under Stock Corporation Law, Laws 1892, pp. 1824, 1867, c. 688, §§ 2, 48. Held, that the execution of the mortgage by the corporation was only a performance of the contract entered into by it when it bought the lease of the premises and a renewal of a purchase money mortgage, so that it did not require the assent of two-thirds of the stockholders to render it valid.

2. SAME.

Where a corporation takes an assignment of a lease of a hotel and assumes a mortgage given for the purchase price of chattels covered thereby, a subsequent renewal mortgage executed by the corporation comes within the exception of Stock Corporation Law, Laws 1892, pp. 1824, 1867, c. 688, §§ 2, 48, requiring consent of stockholders, unless it is a purchase money mortgage.

Action by one Black against one Ellis to set aside a chattel mortgage. Judgment for defendant.

Edgerton, Allen & Dean, for plaintiff.
M. T. Hayman, for defendant.

McCALL, J. This is an action brought by the receiver of a defunct corporation to set aside a chattel mortgage made by the said corporation, upon the assertion that the giving of such a mortgage was in violation of sections 2 and 48 of the stock corporation law. Laws 1892, pp. 1824, 1867, c. 688. In July, 1904, William Gum and Andrew Grant were the owners of premises Nos. 208 and 210 West Fifty-Sixth street, in this city, and on that date they executed a lease of said premises to one Annie N. Anderson, and on or about the same date the said Gum and Grant, being owners of certain chattels in or about the hotel premises, sold same and transferred them to said Anderson, who simultaneously executed a chattel mortgage thereon for $7,500. By the nineteenth clause of said lease the tenant was to secure the landlord for the performance of the conditions of the lease on her part to be performed by giving this chattel mortgage for $7,500 covering, not only the household furniture which she had purchased and which was located in the hotel premises, but other personal property located in No. 60 West Thirty-Ninth street. By another clause of the lease it was provided as one of the conditions of the lease, among other things, "that on or before July 1 in each and every year of the term demised the tenant would execute, make and deliver a new chattel mortgage," etc., so as to entitle it to be filed and to be a first lien upon the said premises. By another clause of said lease it was stipulated:

"That the failure of the landlord to insist upon a strict performance of any of the covenants and conditions shall not be asserted as a waiver or relinquishment for the future of any such covenant or condition," etc.

About four days after the execution of this lease, and on or about July 27, 1904, said Anderson transferred her entire interest in the lease to the Sterling Hotel Company, and at the same time transferred to them all the chattels on said premises covered by the chattel mortgage, subject to the lien of such mortgage, and, as part condition for the sale of said chattels and transfer of said lease, the Sterling Hotel Company assumed all the obligations in said lease contained on the part of the tenant to be performed, and entered upon the premises pursuant thereto. Since that time down to July 17, 1907, the Sterling Hotel Company continued to occupy the premises, conducting therein an apartment hotel. On June 13, 1905, Gum and Grant transferred the fee of these premises to the defendant, who ever since has been and remains the owner thereof, and on same day transferred to him the chattel mortgage referred to, supra. On the 27th day of July, 1904, no question is raised and no doubt exists but that this corporation was absolutely solvent, and, when the defendant became the owner of the fee, the said corporation attorned to him and paid him rent from time to time. Shortly after Mr. Ellis' acquisition as landlord the hotel company began to fall back in its payment of rent, working along under the toleration of the landlord, paying as best it could, but never for two years prior to March 20, 1907, getting out of its arrearage but in the year prior to said date had paid its full rent, to wit, $19,000, and on

that day owed to the defendant the sum of $10,000 for back rent. The chattel mortgage which had originally been given by Anderson was never renewed or refiled up to March 20, 1907, although for some time previous to that day Mr. Ellis had been requesting a performance of that obligation on the part of the tenant, and under threat of dispossess the three directors of the corporation agreed to give the mortgage, and on that date same was given, signed, and executed by the secretary and treasurer and filed. It is a significant fact that the entire board of directors were owners of more than two-thirds of the stock issued. The total capital stock was 200 shares, of which only 135 shares were issued, 35 to Mr. Gillingham, 35 to Mr. Scott, 35 to Mr. Boone and 30 to Miss Anderson, and Gillingham, Scott, and Boone constituted the board of directors. No formal meeting of stockholders was held to authorize, and the necessary consents of stockholders to making of this mortgage were never filed, and these conceded facts, coupled with the assertion of the unquestioned insolvency of the corporation on March 20, 1907, the date the instrument was executed, this plaintiff contends makes said mortgage invalid and void, and should be set aside, discharged, and canceled of record. This contention would be unanswerable if it were based upon facts which revealed the execution of this mortgage as the creation of a new initial obligation of that date of March 20, 1907, under the conditions of unquestioned insolvency that then prevailed, or if it presented the feature of this defendant securing, no matter by what method, some new or additional security for his accrued indebtedness to the disadvantage of other creditors at a time when the estate of the insolvent one should have been conserved for the benefit of all and not depleted to the advantage of one as against the others; but that is not the case presented by this record. This mortgage, executed on March 20, 1907, when it may be conceded the corporation was insolvent, was but the observance of contractual obligation entered into and assumed in July, 1904, at which time no question exists as to its absolute soundness. So, therefore, no matter about the later insolvency of the corporation or the question of Mr. Ellis' knowledge of the condition (which is greatly to be questioned), that which transpired on March 20, 1907, does not fall within the prohibition of the statute, but must be construed as relating back to May, 1904, and simply effectuating the contractual obligation at that time assumed. The reasoning on and the conclusion reached as to the first point, it seems to me, effectually disposes of that raised by the second point, to wit, noncompliance with that statutory requirement of section 2. It must be borne in mind that it cannot be asserted that the consent of the requisite two-thirds was not obtained, because we have it demonstrated that the mortgage was executed after conference and upon consent of Boone, Gillingham, and Scott, as directors, if you please, but also holders of 105 shares of the 135 shares issued out of total capitalization of 200 shares, and, if any violation of the act is to be spelled out at all, it can only be found in the neglect to file the said consent, but there is a provision of the statute which excepts purchase money mortgages from the requirement of the assent of two-thirds of stockholders to be filed. This corporation became possessed of these chattels from its vendor by the assumption of the obligation of a chattel mortgage which she had

given in part payment for same to the grantors of this defendant, who were the owners and who transferred to him by assignment the said mortgage as part of the transaction of transfer. The execution of the mortgage by them on March 20, 1907, it has been found, was but the performance of contractual obligations entered into when they bought the lease of these premises, and from its very character the mortgage was but a reiteration or renewal of the purchase money mortgage, and hence it did not under the section require the assent of two-thirds of the stockholders, and is valid without same.

Can there be any question that if this corporation had refused to comply with Mr. Ellis' request, or if the stockholders, if their consent was necessary, had refused to extend same, but that he (Ellis) could have enforced his demand through equity by compelling specific performance? It was practically his (Ellis') property. Although his grantors had transferred it to the corporation's vendor, it was for the consideration of the mortgage which they in time transferred to Ellis, and it remained unpaid. Certainly no equitable disposition of this case would allow them to take this furniture as their asset while its price due to Ellis remained unpaid, but then, in any aspect of the mortgage. this statute was passed for and can be invoked only for the protection of the stockholders. The receiver cannot have any greater rights than they had under such circumstances, and is there any doubt but that they would be estopped from pleading same? Upon the merits the complaint must be dismissed and judgment rendered for the defendant.

Complaint dismissed upon the merits and judgment rendered for the defendant.

Complaint dismissed, and judgment for defendant.