WILLIAM H. BLACK, as Receiver of the STERLING HOTEL COMPANY, Appellant, *v.* CHARLES E. ELLIS, Respondent.

Chattel mortgage — purchase of chattels by corporation subject to a purchase-money mortgage and a covenant on its part to renew — when renewal of such mortgage not in violation of statute requiring consent of stockholders to mortgaging of corporate property — when not in violation of section 48 of the Stock Corporation Law prohibiting transfers by a corporation in view of insolvency.

A chattel mortgage given under such circumstances as constituted it a purchase money mortgage, contained a covenant to renew every year during the term thereof. The mortgagor transferred the chattels to a corporation which accepted the title thereto subject to the lien of the mortgage and under a covenant on its part to renew and executed a new mortgage in compliance therewith without obtaining the consent of its stockholders. *Held,* that the statute, requiring the consent of two-thirds of the stockholders to a mortgage, applies to creating a new incumbrance on corporate property and not to keeping alive one on existing property acquired subject to a mortgage and under an agreement to continue it as a valid and subsisting lien; that a court of equity would, upon proper application, have compelled the corporation to perform its contract by giving a new mortgage without the consent of the stockholders, and a decree for specific performance would have followed if all the stockholders had united in opposition thereto. Hence their consent was not necessary to a valid renewal of the mortgage in question.

The new mortgage was not in violation of section 48 of the Stock Corporation Law which prohibits certain transfers by a corporation, its officers and directors in contemplation of insolvency, since the renewal of the mortgage must be construed as relating back to and simply effectuating the contractual obligation originally assumed.

*Black* v. *Ellis,* 129 App. Div. 140, affirmed.

(Argued January 11, 1910; decided February 8, 1910.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered December 17, 1908, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court on trial at Special Term.

This action was brought by the receiver of a domestic corporation known as the Sterling Hotel Company, to set aside a chattel mortgage given by the latter upon the ground, among others, that two-thirds of the stockholders had not consented thereto as required by statute.

The action was tried at Special Term and the court found the following facts, in substance: On the 23rd of July, 1904, Gunn & Grant, who then owned certain premises in the borough of Manhattan, leased the same to Annie M. Anderson for the term of twenty-one years, beginning at the date named, at a rent reserved of $19,000 a year, payable in equal monthly installments. The lease contained the following clauses:

" *Eighteenth.* And the said tenant hereby covenants and agrees to pay to the said landlords in case of any breach or default by her in any of the covenants and agreements on her part herein agreed to be kept and performed, the sum of $7,500, which is to be taken and received by the said landlords as liquidated damages for said breach and not by way of penalty. It being understood and agreed that said sum so to be paid as liquidated damages shall be additional to the liability for any rent and sums added to the rent by reason of the agreement of the tenant to indemnify the landlords that may have accrued under this lease at the time of such breach on the part of the tenant of any of the covenants or conditions herein contained.

" *Nineteenth.* And the said tenant does hereby covenant and agree that she will secure the payment of the said $7,500 by executing to the said landlords, at the time of the execution of this lease, a chattel mortgage for that amount upon certain household furniture and chattels belonging to her and stored at No. 60 West 39th street, borough of Manhattan, city of New York, and also upon household furniture and chattels in the premises hereby demised, and this day sold to the tenant by the said landlords, and said tenant further covenants that during the continuance of this lease the said household furniture and chattels covered by said chattel

mortgage shall be kept by her in as good condition as they are at present, and when worn out or destroyed shall be by her replaced by others equally as good, and said tenant covenants and agrees as one of the conditions of this lease, that on or before July 1st, in each and every year of the term hereby demised, to make, execute and deliver to said landlords a new chattel mortgage in proper shape and form so as to entitle it to be filed and to be a first lien upon the household furniture and chattels hereinabove agreed to be covered by the chattel mortgage given simultaneously herewith, and also upon any and all household furniture and chattels procured to replace such furniture and chattels as may be worn out or destroyed. And said tenant further covenants and agrees that on or before June 1st, 1907, and on or before June 1st in each third year thereafter, during the continuance of this lease, she will unite with said landlords in the preparation of an appraisal of the household furniture and chattels contained in said demised premises, and in case the value thereof shall, in the opinion of said appraisers, have fallen below $7,500, then and in that event said tenant agrees to place new and additional household furniture and chattels in said premises to bring the value of the household furniture and chattels in said demised premises up to the sum of $7,500 in the opinion of said appraisers, and said tenant agrees to include the said new and additional household furniture and chattels so appraised in the subsequent chattel mortgage to be given hereunder. The expense of said appraisement shall be equally borne by the tenant and landlords, and each is to choose an appraiser, and in case the two appraisers cannot agree, the appraisers are to choose an umpire, whose decision shall be final. The said tenant guarantees that the said household furniture and chattels above mentioned at said No. 60 West 39th street shall be of the value of $1,500 on an appraisal by the landlords to be had in five days after the execution hereof, and if on such appraisal the value of such furniture and chattels should fall below $1,500, said tenant agrees to immediately furnish sufficient furniture and chattels to bring such appraisal up to $1,500,

and agrees to add such additional furniture and chattels to the schedule in the said chattel mortgage.

" *Twentieth.* The failure of the landlords to insist upon strict performance of any of the covenants or conditions of this lease or to exercise any option herein conferred in any one or more instances, shall not be construed as a waiver or relinquishment for the future of any covenants, conditions or options, but the same shall be and remain in full force and effect."

At the time that the lease was executed the landlords sold and delivered to the tenant certain household furniture and chattels belonging to them, and referred to in said paragraph nineteen as " this day sold to the tenant by the said landlords." At the same time the tenant executed and delivered to the landlords a mortgage covering the chattels specified in the lease to secure the payment of the said sum of $7,500, which mortgage was filed in due time in the proper office.

Four days later, and on the 27th of July, 1904, the tenant transferred her interest in the lease to the Sterling Hotel Company, and sold and delivered to it all the furniture mentioned in the nineteenth clause, subject to said chattel mortgage covering the same. The instrument of transfer was duly recorded. "As part of the consideration for the sale of said chattels and the transfer of the said lease, the Sterling Hotel Company assumed all the obligations in said lease contained on the part of the tenant to be performed, and accepted the title to said chattels, subject to the lien and incumbrance of the chattel mortgage hereinabove set forth and entered on the premises covered by said lease pursuant thereto."

On the 13th of January, 1905, Gunn & Grant conveyed the fee of said premises to the defendant by deed duly recorded and also assigned to him said chattel mortgage, and ever since he has been the owner of both. Since the date last named, and until dispossessed by warrant in summary proceedings in August, 1907, the hotel company was the tenant in occupation of said premises and it attorned to the defendant as its landlord, paid him rent and kept other covenants contained in the lease on the part of the tenant to be performed. When thus

dispossessed the hotel company was and still is indebted to the defendant for back rent under said lease in a sum exceeding $7,500.

On the 20th of March, 1907, the hotel company executed and delivered to the defendant a chattel mortgage covering the same personal property embraced in the original mortgage from Anderson to Gunn & Grant. This mortgage contained the same terms and provisions as the old one and in addition thereto the following clause : " These presents being given in conformity with the clause in said lease that the chattel mortgage mentioned therein should be re-executed and re-delivered yearly by the tenant to the landlord ; these presents being to ratify and confirm and in all respects to carry out the provisions in said lease contained, relating to said chattel mortgage."·

At all times prior to and including July 27th, 1904, and at the time of the transfer of the lease and chattel mortgage from Anderson to the Sterling Hotel Company, the latter was solvent and able to pay its debts and liabilities in full. Said chattel mortgage dated March 20th, 1907, was executed and delivered without the written consent of two-thirds of the stockholders of the hotel company given and filed as required by statute. More than two-thirds of the stockholders, however, were aware of the execution and delivery thereof at the time. There were but four stockholders, three of whom, being the president, vice-president, and secretary and treasurer, owned 105 shares and the remaining stockholder was said Anderson who owned 30 shares, only 135 shares in all having been issued. No stockholders' meeting was called to consider the question of giving the last chattel mortgage, the subject was never considered and discussed at a stockholders' meeting, and the minute book of the stockholders contains no record of the assent of any of the stockholders to the execution thereof. Said Anderson had no knowledge of the execution of the last mortgage prior to its delivery, nor was she at any time consulted in reference thereto, but before it was given the defendant notified the hotel company and its officers that unless it

did execute and deliver the mortgage he would institute summary proceedings to dispossess the corporation from the premises for the non-payment of rent. Thereafter said mortgage was executed by the proper officers of the company with the knowledge and consent of all the officers, directors and stockholders, except said Anderson. When the second mortgage was given the defendant had no knowledge that the hotel company was insolvent. The plaintiff was appointed receiver on the 27th of July, 1907.

After finding these facts, among others, the Special Term found as conclusions of law that the mortgage of March 20th, 1907, was not given or accepted in violation of the Stock Corporation Law, and that it was and at all times remained a valid lien upon the property therein described. The complaint was dismissed, with costs. The plaintiff excepted to the conclusions of law and appealed from the judgment, which was affirmed by the Appellate Division, with two dissenting votes. The plaintiff now appeals to this court.

*Charles A. Edgerton* and *Garrard Glenn* for appellant. The giving of the consent of two-thirds of the stockholders and the filing of a certificate thereof is a statutory condition to the validity of the mortgage. (L. 1892, ch. 688, § 2; *R. S. Bank* v. *Averill*, 96 N. Y. 467; *Beebe* v. *R. L., etc., Co.*, 3 App. Div. 334; *Lord* v. *Y. G. Co.*, 99 N. Y. 547; *Vail* v. *Hamilton*, 85 N. Y. 453; *Wood & Selick* v. *Ball*, 190 N. Y. 217.) There being in the present case no substantial compliance with the statute the mortgage is void. (*G. S. Co.* v. *Whitin*, 69 N. Y. 328; *Paulding* v. *C. S. Co.*, 94 N. Y. 334; *G. V. B. M. Co.* v. *F. Nat. Bank*, 95 Fed. Rep. 231; *H. T. Co.* v. *Clemes*, 17 App. Div. 172; 163 N. Y. 423; *R. S. Bank* v. *Averill*, 96 N. Y. 467; *N. Y. C. Co.* v. *Mayor, etc.*, 104 N. Y. 1; *Beebe* v. *R. L., etc., Co.*, 3 App. Div. 334; *Q. D. Co.* v. *Plant*, 51 App. Div. 607.)

*Maurice S. Hyman* for respondent. Section 48 of the Stock Corporation Law was not violated. (*Miller* v. *M. K.*

*Co.*, 23 Misc. Rep. 404; *Matthews* v. *Hardt*, 79 App. Div. 571; *Paulding* v. *C. S. Co.*, 94 N. Y. 340; *Brower* v. *B. T. Co.*, 50 N. Y. S. R. 630; *Bream* v. *Bank*, 25 N. Y. S. R. 283; *Gunther* v. *Mayer*, 51 N. Y. S. R. 538; *Elmira Savings Bank* v. *Davis*, 142 N. Y. 590; *Scott* v. *Armstrong*, 146 U. S. 499; *Castle* v. *Lewis*, 78 N. Y. 131.) Section 2 of the Stock Corporation Law was not violated, inasmuch as the mortgage in question was a purchase-money mortgage. (*Lawrence* v. *Fox*, 20 N. Y. 268; *Burr* v. *Beers*, 24 N. Y. 178; *Campbell* v. *Smith*, 71 N. Y. 26; *Calvo* v. *Davies*, 73 N. Y. 211; *Hand* v. *Kennedy*, 83 N. Y. 150; *Bowen* v. *Beck*, 94 N. Y. 86; *Schley* v. *Freyer*, 100 N. Y. 71; *F. L. & T. Co.* v. *E. G. L. Co.*, 84 Hun, 373; *Coman* v. *Lackey*, 80 N. Y. 345; *Amerman* v. *Wile*, 24 N. J. Eq. 13.) The agreement to give the mortgage is enforceable in a court of equity, and section 2 of the Stock Corporation Law is inapplicable. (*Paulding* v. *Chrome Steel Co.*, 94 N. Y. 340; *Miller* v. *Miller Knitting Co.*, 23 Misc. Rep. 404; *Bream* v. *Bank*, 25 N. Y. S. R. 284; *Hale* v. *Omaha Bank*, 49 N. Y. 626; *Wisner* v. *Ocumpaugh*, 71 N. Y. 113; *Kribs* v. *Alford*, 120 N. Y. 519; *Chapin* v. *Brown*, 6 Johns. Ch. 398; *Lazarus* v. *Heilman*, 1 Abb. [N. C.] 93; *Lavelle* v. *Moore*, 33 N. Y. 658; *Payne* v. *Wilson*, 74 N. Y. 351.)

VANN, J. The main question presented by this appeal depends on section two of the Stock Corporation Law, as in force on the 20th of March, 1907, the date when the chattel mortgage in question was executed and delivered. That section, after authorizing a stock corporation to borrow money and contract debts when necessary for the transaction of its business, provided that "Every such mortgage, *except purchase-money mortgages* * * * shall be consented to by the holders of not less than two-thirds of the capital stock of the corporation, which consent shall be given either in writing or by vote at a special meeting of the stockholders called for that purpose, upon the same notice as that required for the annual meetings of the corporation; and a certificate

under the seal of the corporation that such consent was given by the stockholders in writing, or that it was given by vote at a meeting as aforesaid, shall be subscribed and acknowledged by the president or a vice-president and by the secretary or an assistant secretary, of the corporation, and shall be filed and recorded in the office of the clerk or register of the county wherein the corporation has its principal place of business." (L. 1890, ch. 564, § 2; L. 1901, ch. 354, § 1, amending said section 2; L. 1905, ch. 745, § 1, further amending said section 2. See, also, section 6, ch. 59, Consol. Laws.)

The Special Term was of the opinion that the limitation of power contained in said section did not apply to the mortgage in question because it was a purchase-money mortgage, and one of the justices of the Appellate Division was of the same opinion. The other justices of that learned court, however, divided equally upon the question whether the statute was so substantially complied with that a court of equity would not set the mortgage aside. (*Black* v. *Ellis*, 129 App. Div. 140.)

All the writings executed by the original parties on the 23d of July, 1904, including the lease, the bill of sale of certain chattels and the mortgage back thereon, were parts of the same transaction and should be read together with the same force and effect as if all were contained in a single instrument. What was the legal situation when that transaction was completed? Annie M. Anderson had rented certain real estate of Gunn & Grant and had agreed in the lease to pay them the sum of $7,500 as liquidated damages if she broke any covenant thereof. She had covenanted, also in the lease, to secure the payment of said sum by a mortgage on certain chattels already belonging to her and upon certain other chattels concurrently sold to her by Gunn & Grant. She gave the mortgage accordingly and that was a purchase-money mortgage, because she had not paid for the chattels sold her by Gunn & Grant and she acquired title thereto by virtue of all the writings taken together, of which the mortgage was a part.

But she had further covenanted in the lease that every year

during the term thereof, she would, on or before a day named, execute and deliver to Gunn & Grant " a new chattel mortgage in proper shape and form so as to entitle it to be filed and to be a first lien upon the household furniture and chattels hereinabove agreed to be covered by the chattel mortgage given simultaneously herewith　＊　＊　＊."

What was the legal situation when the second transaction was completed? Annie M. Anderson had transferred her interest in the lease to the Sterling Hotel Company and had sold and delivered to it all said chattels, subject to the mortgage covering the same, and the hotel company, in consideration of the sale of said chattels and the transfer of said lease, had assumed all the obligations of the lease on the part of the tenant to be performed, had accepted title to said chattels subject to the lien of the mortgage and had entered into possession of the premises covered by the lease. These instruments had been duly filed or recorded so as to give constructive notice to all the world. The mortgage, but four days old, was still a purchase-money mortgage, and the Sterling Hotel Company had acquired title to the chattels covered thereby, taking such title subject to the lien of the purchase-money mortgage and under a covenant on its part to renew it every year in proper form. In other words, the hotel company did not pay for the chattels in money, but by assuming the purchase-money mortgage thereon and agreeing to renew it every year. The obligation to renew was part of the purchase price of the chattels. Thus, the mortgage in question was a purchase-money mortgage in effect through two independent transactions, because the title to the chattels passed to the first purchaser by virtue of the first transaction, including the mortgage, and to the second purchaser by virtue of the second transaction, including the covenant to keep the mortgage good by successive renewals. As was said by Mr. Justice HOUGHTON in his concurring opinion below: " The corporation took the property subject to the chattel mortgage given by Anderson, and took the assignment of the lease from her whereby it was agreed that the mortgage should be kept

alive. If the corporation chose to keep the property and the lease as it did, it was under obligation to keep the chattel mortgage alive as the lease provided. Being under such contractual obligation as a consideration of obtaining and holding title to the property and enjoying the lease, I do not think the statute as to consent of stockholders to giving a mortgage applied. The statute manifestly applies to creating a new incumbrance on corporate property, not to keeping alive one existing on property acquired subject to mortgage and under agreement to continue as a valid and subsisting lien." (p. 150.)

At any time after the date to renew came around, a court of equity upon proper application would have compelled the hotel company to perform its contract by giving a new mortgage. No consent of the stockholders would have been requisite, and a decree for specific performance would have followed if all the stockholders had united in opposition thereto. (*Coman v. Lakey*, 80 N. Y. 345; *Wisner v. Ocumpaugh*, 71 N. Y. 113; *Hale v. Omaha National Bank*, 49 N. Y. 626.)

The facts in the case first cited arose under a statute which authorized corporations created thereby to purchase property, both real and personal, but prohibited them from mortgaging the same or giving any lien thereon.

The controversy arose between the assignee of a chattel mortgage given by the corporation to secure the purchase price of the property covered thereby and a judgment creditor of the corporation, with an execution in the hands of the sheriff and a levy made by virtue thereof. The court held that the owner of the chattel mortgage was entitled to hold the property as against all except *bona fide* purchasers until the purchase money was paid. Chief Judge CHURCH said: "The statute does not prohibit a corporation from owning incumbered property, nor from buying such property subject to incumbrances, nor from taking a qualified title, nor from taking property by a conditional sale. The transaction must be construed as a whole, and all the papers must be

read together, and in effect it was a sale upon condition of payment of the purchase price within a specified period. * * * Courts of equity regard the substance, and not the form of a transaction, and one of the favorite maxims is to regard that as done, which has been agreed to be done, and ought to have been done. * * * The corporation received this property *cum onere,* * * *. Suppose the corporation had refused to execute a mortgage for want of power, would it have been permitted to hold the property discharged of the lien? Clearly not. They must have restored the property, or have held it as upon a conditional sale, which was not prohibited by the statute. The vendor's rights are secured by a law higher than, and independent of, statute. They grow out of the transaction itself, and are not dependent entirely upon the act of the corporation in creating a lien, but arise from the act of the vendors in transferring the property, subject to the payment of the purchase money, and are secured by the rule which protects equitable liens of vendors, and which courts will be astute to enforce, in order to effectuate the real intent of the parties, and require them to do whatever is necessary to conform their acts to the essential nature of the transaction." (p. 350,) The principle of that case went beyond the principle upon which we found our decision, but it strongly suggests the attitude which courts of equity take under circumstances somewhat analogous to those now before us.

The claim, made at the trial, but apparently not at the Appellate Division and certainly not before us, that the new mortgage was given in violation of section 48 of the Stock Corporation Law, which prohibits certain transfers by a corporation, its officers and directors, in contemplation of its insolvency, was properly disposed of by Mr. Justice McCALL in his opinion at Special Term, as follows: "This mortgage, executed on March 20th, 1907, when it may be conceded the corporation was insolvent, was but the observance of contractual obligations entered into and assumed in July, 1904, at which time no question exists as to its absolute soundness.

* * *   That which transpired on March 20th, 1907, does not fall within the prohibition of the statute, but must be construed as relating back to May, 1904, and simply effectuating the contractual obligation at that time assumed."

The judgment should be affirmed, with costs.

CULLEN, Ch. J., GRAY, EDWARD T. BARTLETT, HAIGHT, WERNER and HISCOCK, JJ., concur.

Judgment affirmed.