### In re PROGRESSIVE WALL PAPER CORP.

#### DOCK & COAL CO. v. JUSTIN.

##### (District Court, N. D. New York. February 28, 1916.)

BANKRUPTCY ⊙⇒184(1)—CHATTEL MORTGAGES—CONSENT OF STOCKHOLDERS—STATUTORY PROVISIONS.

> Stock Corporation Law N. Y. (Consol. Laws, c. 59) § 6, authorizes stock corporations to mortgage their property, and provides that every such mortgage, except purchase-money mortgages and mortgages authorized by contracts made prior to May 1, 1891, shall be consented to by the holders of not less than two-thirds of the capital stock, which shall be given either in writing or by vote at a special meeting called for that purpose, and that a certificate under the seal of the corporation that such consent was so given shall be subscribed and acknowledged, and filed and recorded with the clerk or register of the county. *Held,* that this statute is for the benefit of creditors, as well as stockholders, and where the statute was not complied with a chattel mortgage was void as against a trustee in bankruptcy.

> [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 275; Dec. Dig. ⊙⇒184(1).]

In Bankruptcy. In the matter of the Progressive Wall Paper Corporation, bankrupt, wherein Fred H. Justin, was trustee. On review of an order of the referee in bankruptcy, holding invalid and void, because its execution was not assented to by a majority of the stockholders of the corporation, a chattel mortgage given to secure the payment of three promissory notes made by the Progressive Wall Paper Corporation, aggregating in amount $11,382.59, and which notes had been made at a prior date by the Progressive Wall Paper Corporation to the Dock & Coal Company, the claimant herein. Order affirmed.

Patrick J. Tierney, of Plattsburgh, N. Y., for claimant.

Weeds, Conway & Cotter, of Plattsburgh, N. Y. (Frank E. Smith, of Plattsburgh, N. Y., of counsel), for trustee.

RAY, District Judge. The Progressive Wall Paper Corporation is a domestic stock corporation, and was organized in 1904 under the

laws of the state of New York, with a capital stock of $210,000, divided into 2,100 shares, of $100 each. In 1913 the capital stock was increased by the addition of $100,000 of preferred stock, consisting of 1,000 shares, of $100 each. The chattel mortgage, the validity of which is in question here, was executed in July, 1914, and there had then been issued and was outstanding 1,283 shares of the common stock and 118 shares of the preferred stock of said corporation, making the total issued and outstanding stock at that time 1,401 shares. July 4, 1914, at a meeting of the directors of said corporation, there was present John J. Cunningham, its president, and John H. Derby, Archibald S. Derby, and Grenville M. Ingallsbee, directors, and a resolution was then and there adopted authorizing the execution of a mortgage to the Dock & Coal Company as collateral security for the payment of three promissory notes of the said corporation and covering two piles of wood pulp belonging to the corporation. The president of the corporation was authorized to execute and deliver said chattel mortgage. On said day the mortgage was executed and delivered to the Dock & Coal Company to secure the payment of three promissory notes, which had theretofore been made by the Progressive Wall Paper Corporation, and which were then held by the said Dock & Coal Company, viz., one for $3,382.59, dated June 27, 1914, and due August 22, 1914; one for $4,000, dated June 27, 1914, and due September 26, 1914; and the other for $4,000, dated June 27, 1914, and due October 24, 1914. This mortgage covered the property above mentioned and was duly filed in Clinton county clerk's office July 6, 1914. There is no claim that there had been any prior agreement made by the corporation or its stockholders to execute and deliver any such mortgage. Cunningham, J. H. Derby, A. S. Derby, and Ingallsbee, who were present at the meeting when the above resolution was adopted, owned of the common and preferred stock 826½ shares.

The Dock & Coal Company was a partnership composed of George C. Kellogg and John F. O'Brien. Said Kellogg was then a stockholder of the Progressive Wall Paper Corporation and owned 80 shares of the common stock. No consent in writing to the making of said chattel mortgage was executed, and no consent in writing signed by the holders of two-thirds of the issued capital stock of the said corporation was ever made or signed by said stockholders, and no meeting of the stockholders was called or held to consider the question of executing such a mortgage. No certificate that the consent of the holders of two-thirds of the capital stock of said corporation to the making of such mortgage has ever been filed in the office of the clerk of Clinton county, in which county the principal office and place of business of said corporation was located.

November 23, 1914, a petition in bankruptcy was filed against or by the said Progressive Wall Paper Corporation and adjudication followed. December 10, 1914, Fred H. Justin was duly appointed and qualified as trustee of said bankrupt. The trustee thereupon took possession of all the pulp mentioned in the chattel mortgage which then remained in the possession of the Progressive Wall Paper Corporation. January 5, 1915, the said Dock & Coal Company asserted

its claim by notice on the said wood pulp and asserted its right to sell the same. The referee thereupon made an order for a hearing in relation to the validity of said chattel mortgage, and the matter was tried out before the referee, and thereupon the order under review holding the mortgage invalid was made.

Section 6 of chapter 61, Laws of 1909 of the state of New York, being section 6 of chapter 59 of the Consolidated Laws, and known as "Stock Corporation Law," reads as follows:

*"Power to Borrow Money and Mortgage Property.* In addition to the powers conferred by the general corporation law, every stock corporation shall have the power to borrow money and contract debts, when necessary for the transaction of its business, or for the exercise of its corporate rights, privileges or franchises, or for any other lawful purpose of its incorporation; and it may issue and dispose of its obligations for any amount so borrowed, and may mortgage its property and franchises to secure the payment of such obligations, or of any debt contracted for said purposes. Every such mortgage, except purchase-money mortgages and mortgages authorized by contracts made prior to May first, eighteen hundred and ninety-one, shall be consented to by the holders of not less than two-thirds of the capital stock of the corporation, which consent shall be given either in writing or by vote at a special meeting of the stockholders called for that purpose, upon the same notice as that required for the annual meetings of the corporation; and a certificate under the seal of the corporation that such consent was given by the stockholders in writing, or that it was given by vote at a meeting as aforesaid, shall be subscribed and acknowledged by the president or a vice-president and by the secretary or an assistant secretary, of the corporation, and shall be filed and recorded in the office of the clerk or register of the county wherein the corporation has its principal place of business. When authorized by like consent, the directors under such regulations as they may adopt, may confer on the holder of any debt or obligation, whether secured or unsecured, evidenced by bonds of the corporation, the right to convert the principal thereof, after two and not more than twelve years from the date of such bonds, into stock of the corporation; and if the capital stock shall not be sufficient to meet the conversion when made, the directors shall from time to time, authorize an increase of capital stock sufficient for that purpose by causing to be filed in the office of the secretary of state, and a duplicate thereof in the office of the clerk of the county where the principal place of business of the corporation shall be located, a certificate under the seal of the corporation, subscribed and acknowledged by the president and secretary of the corporation setting forth,

"1. A copy of such mortgage; or resolution of directors authorizing the issue of such bonds;

"2. That the holders of not less than two-thirds of the capital stock of the corporation duly consented to the execution of such mortgage or resolution of directors authorizing the issue of such bonds by such corporation;

"3. A copy of the resolution of the directors of the corporation authorizing the increase of the capital stock of the corporation necessary for the purpose of such conversion;

"4. The amount of capital theretofore authorized, the proportion thereof actually issued and the amount of the increased capital stock.

"If the corporation be a railroad corporation the certificate shall have indorsed thereon the approval of the public service commission having jurisdiction thereof. When the certificate herein provided for has been filed, the capital stock of such corporation shall be increased to the amount specified in such certificate."

From the statement of facts it is seen that the mortgage in question is not a purchase-money mortgage, and was not authorized by a contract or contracts made prior to May 1, 1891. It is also seen

that the execution and delivery of the mortgage was not consented to by the holders of not less than two-thirds of the capital stock of the corporation. It is also seen that there was no meeting of the stockholders of the corporation called or held for the purpose.

On the part of the trustee in bankruptcy it is contended, as was held by the referee in bankruptcy, that for these reasons the mortgage was and is invalid, not only as to the stockholders of the corporation, but as to unsecured creditors, and that the trustee in bankruptcy may take advantage of the noncompliance with section 6 of the Stock Corporation Law above quoted. On the part of and in behalf of the Dock & Coal Company, claimant, it is urged and contended that, even if the mortgage referred to was invalid for noncompliance with the requirements of the statute referred to as to stockholders, it was not invalid as to creditors, and that the trustee in bankruptcy representing the bankrupt corporation and its creditors cannot raise the question or assert the invalidity of such mortgage.

Much will be found in the opinions given by various judges in passing upon this provision of the Stock Corporation Law or similar provisions tending to the conclusion that the section was enacted for the protection of stockholders and no other person or persons. Much will be found in the opinions and some of the decisions tending to a contrary conclusion. I do not find that the Court of Appeals of the state of New York has ever passed directly upon the question. In reading the relevant opinions of that court as much can be found tending to the one conclusion as to the other.

The learned counsel for the Dock & Coal Company contends that the mortgage in question here is not void, but voidable merely, and cites in support of this contention the following cases: Rochester Savings Bank v. Averell, 96 N. Y. 467; Hamilton Trust Company v. Clemes, 17 App. Div. 152, 45 N. Y. Supp. 141; Paulding v. Steel Company, 94 N. Y. 334; Greenpoint Sugar Company v. Whitin, 69 N. Y. 328. He also contends that section 6 of the Stock Corporation Law above quoted was enacted for the purpose of protecting the stockholders of the company, and that none but the stockholders can avail themselves of this provision, and that the trustee cannot avail himself of this provision for the benefit of creditors and avoid the lien of the chattel mortgage. He cites the following cases: Rochester Savings Bank v. Averell, 96 N. Y. 467; Hamilton Trust Company v. Clemes, 17 App. Div. 152, 45 N. Y. Supp. 141; Paulding v. Steel Company, 94 N. Y. 334; Greenpoint Sugar Company v. Whitin, 69 N. Y. 328; Black v. Ellis, 58 Misc. Rep. 391, 111 N. Y. Supp. 347; Id., 129 App. Div. 140, 113 N. Y. Supp. 558; Id., 197 N. Y. 402, 90 N. E. 958.

In Black, as Receiver, v. Ellis, 129 App. Div. 140, 113 N. Y. Supp. 558, affirmed 197 N. Y. 402, 90 N. E. 958, a number of cases were referred to which bear upon this question. The opinion in the Appellate Division was written by Clarke, J., and concurred in by Patterson and Houghton, while Judges Ingraham and McLaughlin dissented with opinions. This is an authority in favor of the claimant Dock & Coal Company, but it was rendered by a divided court. When the case

came into the Court of Appeals (197 N. Y. 402, 90 N. E. 958), it was decided on other grounds, and that court held that the chattel mortgage was given under such circumstances as constituted it a purchase-money mortgage containing a covenant to renew every year during the term thereof; that the mortgagor transferred the chattels to a corporation which accepted the title thereto subject to the lien of the mortgage and under a covenant on its part to renew, and that it executed a new mortgage in compliance therewith without obtaining the consent of the stockholders. That court also held that the statute requiring the consent of two-thirds of the stockholders to a mortgage applies to creating a new incumbrance on corporate property, and not to keeping alive one on existing property acquired subject to a mortgage and under an agreement to continue it as a valid and subsisting lien; that a court of equity would upon proper application have compelled the corporation to perform its contract by giving a new mortgage without the consent of the stockholders, and a decree for specific performance would have followed if all the stockholders had united in opposition thereto; hence that their consent was not necessary to a valid renewal of the mortgage in question. It is seen that the Court of Appeals avoided a decision on the main question passed upon by the court below and upon which that court stood divided.

In London Realty Co. v. Coleman Stable Co. et al., 140 App. Div. 495, 125 N. Y. Supp. 410, it is expressly held that a stock corporation, when sued for the recovery of goods which the plaintiff claims are his by virtue of a chattel mortgage executed by such corporation, may itself defend on the ground that the necessary assent of its stockholders was not given to the execution of such mortgage, as required by section 6 of the Stock Corporation Law above quoted. The court said:

"In order to take advantage of the invalidity of a mortgage, executed without the statutory requirements having been observed, it is not necessary that the objection should be raised by a stockholder or creditor, but the defense is available to the corporation itself."

Lord v. Yonkers Fuel Gas Co., 99 N. Y. 547, 2 N. E. 909, is cited as authority. If the corporation itself, as here held, may assert the invalidity of a chattel mortgage for want of assent thereto by its stockholders, it would seem perfectly clear that the trustee in bankruptcy, who succeeds to and takes the place of the corporation, may assert the invalidity and plead and sustain any defense which the corporation itself might present.

As an original proposition under the section of the statute referred to, it would seem plain to this court that the requirement of the consent of the stockholders was not for the benefit or protection of the stockholders alone, but for the protection and benefit of the corporation itself and the benefit and protection of the creditors of the corporation. The statute itself does not declare that it is for the protection of the one any more than for the protection of the other. It is now elementary law and well decided that the directors of a corpora-

tion hold its property in equity as a trust fund for the benefit of the creditors of such corporation and also for the benefit of the stockholders. The proceeds of such property is to be applied in equity, first to the discharge of the debts of the corporation, and the surplus, if any, goes to the stockholders. In fact, stockholders cannot take the assets of the corporation for their own benefit to the exclusion of the creditors, and hence a provision for the benefit of the stockholders is a provision for the benefit of the creditors of such corporation.

If the contention made by the claimant here is sustained, it will follow that chattel mortgages executed by the officers and directors of a New York corporation, organized and existing under the provisions of the New York Stock Corporation Law, and which, in order to be valid, must be assented to in the manner required by statute, cannot be challenged by any one except the stockholders themselves, and, it is claimed, for their own benefit, and hence, as a result, when the officers and directors of such a corporation, without the consent of the stockholders, execute such a mortgage to secure a creditor to the exclusion of other creditors, and bankruptcy follows, and actual fraud or intent to prefer cannot be established, and as a result of such bankruptcy the stockholders have no interest to contest the validity of the mortgage, the secured creditor will hold the property to the exclusion of the other creditors and to the exclusion of the trustee in bankruptcy, even though such mortgagee could not have done so if the corporation had remained solvent and the stockholders had seen fit to assert the invalidity of the mortgage because of noncompliance with the statute quoted. That which is for the benefit of the stockholders of a corporation is primarily for the benefit of the creditors of such corporation, inasmuch as unincumbered property owned by such corporation is in equity a trust fund in the hands of the officers and directors, for the benefit of and to be applied first to the payment of creditors, and the balance, if any, to be divided amongst the stockholders on the winding up of the corporation.

It seems to me plain that when the Legislature provided that such a mortgage, executed by the officers and directors of the corporation, in order to be valid, must be assented to by a majority of the stockholders in the manner prescribed, it had in mind and sought to protect, not merely the stockholders, but the corporation itself and its creditors, whose rights are ordinarily superior to those of stockholders. It would be unjust and inequitable to hold that stockholders for their own benefit may avail themselves of a noncompliance with this statute, but that when bankruptcy comes the trustee, representing creditors and charged with the duty of protecting their rights, may not assert a noncompliance with the provisions quoted.

So far as this court is concerned, in the absence of a decision by the Court of Appeals of the state of New York directly in point and to the contrary, it is bound and concluded on this question by the decision of the Circuit Court of Appeals in this (the Second) circuit in Re Post & Davis Co., 219 Fed. 171, 135 C. C. A. 69. In that case the Circuit Court of Appeals expressly disapproves of the holding in

Black v. Ellis, 129 App. Div. 140, 113 N. Y. Supp. 558. The Circuit Court of Appeals holds in the case cited, not only that the trustee may assert the invalidity of the mortgage executed without the necessary consents, but as follows, after quoting the statute:

"The language of the statute is most clear and specific; manifestly it was made so to accomplish some purpose. That purpose is very plainly indicated on the face of the statute; it substitutes for mere oral expressions of assent. casually given it may be, an orderly permanent record, which can be referred to. The provision, in the language of the New York Court of Appeals, 'involves an application to the stockholders, and, on their part, consideration, judgment, and final determination, and, on the part of the assenting stockholders, a written expression of their conclusion.' * * * To hold that written assent of two-thirds of the stockholders may be dispensed with in this case would go much further than any decision of the New York Court of Appeals to which we have been referred or which we have found. There is no pretense that any written assent was ever signed, or that it was ever voted at any stockholders' meeting, special or general. If the statute had been so construed by the state court of last resort, we should follow its construction of the state statute; but until such a decision is cited we are unwilling to fritter away the specific provisions of an act which manifestly were put there to accomplish a plain purpose."

It follows that the order of the referee must be affirmed.