## In re SCHUTTIG.

(District Court, D. New Jersey. October 2, 1924.)

Bankruptcy ⚖184(2)—Chattel mortgages ⚖9—Trust receipt held chattel mortgage, which failed for want of recording.

Trust receipt, held by company advancing money to pay draft accompanying bill of lading, which was in bankrupt's name and was delivered to bankrupt, *held* in fact chattel mortgage, which, when unrecorded gave company no right to automobiles as against trustee in bankruptcy.

In Bankruptcy. In the matter of the bankruptcy of Arthur Schuttig, trading as the Schuttig Motor Company. On petition to review findings of referee. Findings affirmed.

John L. Ridley, of Jersey City, N. J., for claimant Bonded Securities Corporation.

Benjamin Gross, of Jersey City, N. J., for trustee.

BODINE, District Judge. The Bonded Securities Corporation claims three Apperson automobiles, in possession of the trustee in bankruptcy, by virtue of three certain negotiable trust receipts, each substantially of the form following:

"Negotiable Trust Receipt No. 765.

"Union Hill, N. J., September 13, 1923.

"Received from Bonded Securities Corporation, New York, the owner thereof, Apperson motor vehicle, model phaeton serial No. ——, motor No. 1357, complete with all standard catalogue attachments and equipments, in consideration whereof and of being permitted to display same in our

place of business we agree, at our expense, to warehouse and to hold said motor vehicle in trust for the holder of time draft of even number herewith (which we have this day accepted) as their property, and agree to return on demand in good order and unused, but with liberty to us to exhibit and after first obtaining their written consent (but not otherwise) to sell the same for their account for cash for not less than $903, and we further agree, in case of such sale, to keep the proceeds separate from our funds and immediately hand the proceeds to them without expense or cost to the holder of said time draft. The acceptance of time draft equal in amount to the value of said motor vehicle shall not be effective to terminate this trust, but said draft and any sums delivered by us shall be security for the performance of the things obligatory upon us hereunder and all other obligations to holder of said time draft.

"We further agree to keep a separate account of all motor vehicles delivered to us under this or any like receipt and of the proceeds thereof when sold, and to furnish to them on the 1st day of each month a true and complete report for the preceding month. We will also permit them, or their duly accredited representatives, to examine our books and the cars in our possession at all reasonable times during business hours.

"Bonded Securities Corporation shall, during the entire time said car is held hereunder, keep said car insured against loss by fire, and may cause a surety bond for the accounting for the car or proceeds thereof to be issued, and in the event of our failure to redeliver the said car on demand we shall, until redelivery thereof, pay as damages for detention for each month or portion thereof after demand 1 per cent. of said sale price.

"We further agree to pay all costs, charges, expenses and disbursements, including a reasonable attorney's fee (15 per cent. of sale price of car if permitted by law) should the holder hereof find it necessary to protect his property in said car by placing it in the hands of an attorney, and that the waiver of any default shall not operate as a waiver of subsequent defaults, but all rights hereunder shall continue notwithstanding any one or more waivers. We acknowledge receipt of a true copy of this agreement.

"[Signed]  Schuttig Motor Company,
              Trustee-Bailee."

The referee finds as a fact, and his findings are supported by the evidence, that the bankrupt purchased the cars in question from the manufacturer, who shipped them, sending negotiable bills of lading to the order of the bankrupt, with sight drafts upon the bankrupt attached, to the Commonwealth Trust Company, of Jersey City. The bankrupt, before the cars arrived, applied to the Bonded Securities Corporation for a loan equivalent to 80 per cent. of the sight draft. The loan was granted. The bankrupt gave the Bonded Securities Corporation his check for 20 per cent. of the sight draft and signed the trust receipts. The Bonded Securities Corporation sent to the trust company its check for the full amount of the sight draft, with instructions to release the bills of lading to the bankrupt. The dispute between the Bonded Securities Corporation and the trustee in bankruptcy turns on whether the alleged trust receipt is distinguishable from an ordinary chattel mortgage.

Karl T. Frederick, Esq., of the New York bar, in the Columbia Law Review of May and June, 1922, in an exhaustive article, in which all of the cases have been thoroughly and admirably examined, says:

"The distinction is one that exists in fact —it is real and it is clear-cut and workable. This ground of differentiation is the fact that title does not pass to the bank from the importer but rather from a third person. The importer has never held the legal title. He has arranged a purchase-money mortgage to the banker, who makes the loan, without himself appearing in the chain of title. No one is deceived by the fact that the bank has acquired a security title which is unrecorded, because there is no 'retention of possession' by the importer. He has never had either possession or title.

"To state it again, the difference between the true trust receipt situation and the ordinary chattel mortgage is the fact that, in the trust receipt, title passes to the bank (the mortgagee) from the seller of goods, as security for the debt of a third party, while in the ordinary chattel mortgage, title passes to the bank (the mortgagee) directly from the party owing the debt."

Applying this test, it is obvious that the Bonded Securities Corporation never took title from the manufacturer. They were not in contact with the manufacturer. The bills of lading did not read to them, and all that they did was to lend to the bankrupt money to take up the shipping documents covering the cars in question. The bankrupt had title and possession. He gave a

chattel mortgage. It was not recorded; hence it failed.

The findings of the referee are affirmed, with costs.