**In re JAMES, Inc.**

District Court, N. D. New York.   October 26, 1927.

552

Leo Oppenheimer, of New York City (Milton P. Kupfer and Phillip W. Haberman, both of New York City, of counsel), for petitioner Commercial Investment Trust.

Charles A. Phelps, of Watertown, N. Y., for trustees.

Purcell, Cullen & Pitcher, of Watertown, N. Y., for Northern New York Trust Co., Northern Acceptance Corporation, and Jefferson County National Bank.

Costello, Cooney & Fearon, of Syracuse, N. Y., for Syracuse Investment Corporation and Syracuse Mortgage Corporation.

Tracy, Chapman & Tracy, of Syracuse, N. Y., for General Motors Acceptance Corporation.

COOPER, District Judge. This is a motion to confirm the report of the special master in reclamation proceedings. The facts have been stated at length in the special master's learned, painstaking, and elaborate opinion and there seems no occasion to repeat them.

The special master finds the two trust receipt claimants, the General Motors Acceptance Corporation and the Commercial Investment Trust Company, are not entitled to reclaim the autos by virtue of their so-called trust receipts. The special master also finds that the chattel mortgages and so-called conditional contracts of sale of the various other claimants, are void as to the trustee in bankruptcy because of noncompliance with the Stock Corporation Law (Consol. Laws N. Y. c. 59) and the Bulk Sales Law (Personal Property Law [Consol. Laws N. Y. c. 41] § 44), and that the trustee is entitled to retain as against all claimants the proceeds of the sale of the automobiles sold under the stipulation. This would require distribution of the proceeds among the general creditors, to which position all claimants would be relegated. The special master holds that the so-called trust receipts cannot prevail, because the claims of the holders of the trust receipts are defeated by the provisions of the Factors Act (Personal Property Law, § 43), and also because, independent of the Factors Act, they are estopped from asserting their claims under the facts found in this case.

The two claimant finance companies, holders of the trust receipts, contend that the special master is in error. Not only do they contend that their trust receipts are valid and enforceable, independent of the Factors Act or any other legislation, but they assert that, even if Factors Act does apply, under the Factors Act only innocent purchasers, mortgagees, and pledgees in good faith are protected, and that the trustee in bankruptcy does not, even under the amendment of 1910 (36 Stat. 840, § 8) to section 47 of the Bankruptcy Law (11 USCA § 75), have the status of an innocent purchaser, mortgagee or pledgee. Therefore, say these claimants, the chattel mortgages having been held void by the special master, there is no one who can attack the trust receipts.

It seems to this court that there is another and possibly stronger ground on which the report of the special master can and should be confirmed, viz. that the so-called trust receipts are in reality conditional contracts of sale.

Besides the distinctions pointed out by the special master, it should be noted that here there were 27 different trust receipts, so called, given by the bankrupt to the General Motors Acceptance Corporation, between September 4, 1924, and October 30, 1924, each covering from 1 to 6 cars, and 7 of these were renewals of previous trust receipts, which were marked paid and delivered to the bankrupt. Thus there were 20 different shipments of autos and 20 separate trust receipts. The automobiles were shipped from Buffalo, N. Y., to Watertown, N. Y., and all the other transactions took place in Watertown, one of our smaller upstate cities. Thus all the transactions were intrastate, and not interstate or foreign. There were 32 different trust receipts, so called, given by the bankrupt to the Commercial Investment Trust from October 10 to October 28, 1924, each covering one car. These transactions took place in exactly the same way and in the same places, and were likewise intrastate, and not interstate or foreign.

It is apparent that such transactions bear little similarity to imports, which were the

origin of the trust receipt, nor to a bulk shipment in one or more boats or cars in interstate commerce. The so-called trust receipts of the General Motors Acceptance Corporation and the Commercial Investment Trust are similar to and in some cases almost identical with like instruments which have been held to be chattel mortgages and conditional contracts of sale in other states under similar recording and filing acts. Cases so holding are In the Matter of Fenne, 10 A. B. R. (N. S.) 206 (Ohio); In re Bettman-Johnson Co., 250 F. 657 (C. C. A. Ohio); In the Matter of Lee, 6 A. B. R. (N. S.) 437 (Wis.); In re Cullen, 282 F. 902 (D. C. Md); In re Richheimer, 221 F. 16 (C. C. A. Ill.); In re Schuttig, 1 F.(2d) 443 (D. C. N. J.).

In an interesting and informative article by Cameron L. Baldwin, of the Wisconsin Bar, published in the January, 1927, Journal of the National Association of Referees in Bankruptcy, the author, after a careful résumé of the cases, says: "The cases practically unanimously condemn the trust receipt doctrine as to domestic transactions, and I think rightly so. It may safely be said that a 'trust receipt' must be filed as a chattel mortgage or conditional contract of sale in those states which have filing or recording acts."

In arriving at the conclusion that the so-called trust receipts are really conditional contracts of sale, this court has assumed that the title to these autos passed from the Chevrolet Motor Car Company, the original vendor, to the General Motors Acceptance Corporation in one case, and to the Commercial Investment Trust in the other, as contended by these two claimants. This assumption may not be free from doubt. The bills of lading ran to the Chevrolet Motor Company at Watertown, N. Y., and were endorsed by that company in blank and were sent to the Watertown Bank, not by the finance company, but by the original vendor, the Chevrolet Motor Company, to be delivered to the bankrupt on his payment of the draft for 15 or 20 per cent. of the purchase price and signing the promissory note and the so-called trust receipt. The probabilities are that the title to these autos passed to the bankrupt and from him to the finance corporation, for the bill of lading was never delivered to the finance company and was never in its possession. The facts are almost exactly like those in the case of In re Schuttig (D. C.) 1 F. (2d) 443, supra, where the bill of lading ran to the purchaser but was not delivered to him until the payment of the installment on the purchase price and the signature on the note and trust receipt. In that case the instrument was held to be a chattel mortgage and invalid because not filed. So here, if the title passed to the bankrupt, even for a moment and then to the finance company, the trust receipt is a chattel mortgage.

But this court will adopt the contention of the two claimants finance companies that the title never passed to the signer of the trust receipt but went directly from the manufacturer to the finance company, and will hold that the trust receipts, so called, are conditional contracts of sale rather than chattel mortgages, and that they are void for lack of filing. Under the Uniform Conditional Sales Act (Personal Property Law, § 60 et seq.) an unfiled conditional contract of sale is void, not only as to purchasers, mortgagees, and pledgees, but also as against creditors, unless the goods are sold for resale. If sold for resale, as here, then, under section 69, the conditional contract of sale is good as against creditors, and only void as against purchasers, mortgagees, and pledgees for value in good faith and without notice. Though section 69 uses the words "purchasers," by section 61 "purchasers" is defined to include "mortgagees and pledgees."

So, if we accept the contention of the learned counsel for the General Motors Acceptance Corporation and the Commercial Investment Trust, that under the Factors Act, upon which the special master bases his decision, the protection runs only to purchasers, mortgagees, and pledgees, and not to creditors of any kind, or to the trustee in bankruptcy, we have the two acts on a parity so far as their application to the status of the trustee in bankruptcy in this case is concerned. Neither under the Factors Act nor under the Uniform Conditional Contract of Sales Act is the instrument void, if nonfiled, against the creditors and trustees in bankruptcy.

But the special master finds that the Northern Acceptance Corporation, the Northern New York Trust Company, and the Jefferson County National Bank were chattel mortgagees in good faith. The special master is inclined to hold that the Syracuse Mortgage Corporation and the Syracuse Investment Corporation were also chattel mortgagees, but hesitates somewhat to so find, in view of the fact that the bankrupt gave them a bill of sale of certain automobiles, and they in turn advanced him money and took back from him the conditional contract of sale.

It is this court's view that such instruments were chattel mortgages. All these instruments, chattel mortgage or otherwise,

given by the bankrupt to these five banks and financial institutions, were deemed by them to be within the terms of the recording and filing acts of the state of New York, and were in fact filed in the proper office in the state of New York. All these mortgages were taken in good faith and without notice, within the contemplation of these statutes, providing for the filing of chattel mortgages and conditional contracts of sale, and also within the contemplation of the Factors Act, as interpreted by the highest courts of the state of New York. Hence all five were mortgagees in good faith, and as to them the trust receipts, so called, are void under either the Factors Act or the Conditional Sales Act. The General Motors Acceptance Corporation and Commercial Investment Trust are not entitled to reclaim any of the automobiles covered by the several instruments given by the bankrupt and running to these five banks and financial institutions. If there are any autos covered by the so-called trust receipts of the General Motors Acceptance Corporation and the Commercial Investment Trust, and not sold or covered by the chattel mortgages of the other five claimants, such automobiles or the proceeds of the sale under the stipulation are awarded to the General Motors Acceptance Corporation or to the Commercial Investment Trust, as the case may be.

But it is urged by the General Motors Acceptance Corporation and the Commercial Investment Trust that the special master has found the instruments of all these five banks and finance corporations void, because two-thirds of the stockholders did not give their assent in writing to such mortgages as required by Stock Corporation Law, § 16. ▉ The General Motors Acceptance Corporation and the Commercial Investment Trust cannot raise the question of the validity of section 16 of the Stock Corporation Law to protect their so-called trust receipts. All the cases on the subject seem to hold that only creditors and stockholders can attack the validity of the chattel mortgage given by the corporation. In re Post & Davis Co., 219 F. 171 (2d C. C. A.); In re Progressive Wall Paper Corp. (D. C.) 230 F. 171; Maryland Finance Corporation v. Duvall, 284 F. 764 (4th C. C. A.); Commerce Trust Co. et al. v. Chandler, 295 F. 241 (1st C. C. A.).

Here the General Motors Acceptance Corporation and the Commercial Investment Trust claim as owners, and not as either stockholders or creditors; so these companies cannot attack the validity of the chattel mortgages. Even if they be deemed holders of "security title," and not owners, they would occupy the place of secured creditors who do not have the status of general creditors until they surrender their security. The holders of the trust receipts, so called, not having legal status to attack the chattel mortgages and retain or restore the validity of their trust receipts, and the chattel mortgages falling before the attack of the trustee, all claimants fail, and the trustee retains the proceeds of the sale of the automobiles.

The contention of the General Motors Corporation and the Commercial Investment Trust that $200,000,000 secured by such trust receipts will be jeopardized, if these so-called trust receipts are held invalid, is not impressive. No good reason appears why all the outstanding so-called trust receipts should not now be filed in the proper record office, as if they were chattel mortgages or conditional contracts of sale. They are then constructive notice thereof to all the world, and the holders thereof would be protected against all the world, except previous innocent purchasers, mortgagees, and pledgees. Moreover, several months have elapsed since the learned special master held the so-called trust receipts in this case not to be trust receipts, but to be void under the Factors Act, and there has been ample opportunity for those relying upon trust receipts to file them, or, if desired, to change the instruments and replace them with other instruments, the necessity for filing which is unquestionable. It does not appear that there would be any danger to the security to now replace them with chattel mortgages or conditional contracts of sale. Nor does there seem to be any considerable inconvenience to the transaction of business.

The bank upon payment uses a pink and white slip with the number thereon of the car to be released and transmits one to the finance company and one to the purchaser (the bankrupt here).

The same practice could be followed in case of chattel mortgages and conditional contracts of sale. While a satisfaction executed by the local bank as agent might be preferable, it would be of little real importance. The printed release, marked paid, answers every practicable purpose, and the instruments are void after one year under the statute.

The decision of the special master is confirmed, upon the grounds herein stated.